WHITSETT, EX'X, V. UNION DEPOT & R. CO. ET AL.

1. ·In the absence of any constitutional restriction, the power of the legislature to vacate streets and highways, or to invest municipal corporations with this power, cannot be doubted.   There is nothing in our constitution prohibiting its exercise except by special legislation.

2. The city of Denver was invested by its original charter with authority to open, alter, abolish, * * * streets, avenues, * * * and this provision has been continued in the several amendments since made.

3. A municipal corporation is not warranted by law in exercising its power to vacate streets in an arbitrary manner and without regard to the interest and convenience of the public or of individual rights.   But where the power exists and has been duly exercised, the fact that the vacating ordinance provides for the use which is to be made of the street does not aid a property holder who seeks to annul the ordinance on the ground that he is interested in keeping the street open.

4. The rule is that, for any act obstructing a public and common right, no private action will lie for damages of the same *kind* as those sustained by the public, although in a much greater degree.

*· Error to District Court, Arapahoe County.*

THE facts are stated in the opinion.

Messrs. WELLS, MACON and MCNEIL, for plaintiff in error.

Messrs. TELLER and ORAHOOD and B. M. HUGHES, for defendant in error.

BECK, C. J.   Richard E. Whitsett, since deceased, brought an action in the district court of Arapahoe county to enjoin the defendant in error, the Union Depot & Railroad Company, from completing the structure then commenced, and since completed, which extends across Seventeenth street, in the city of Denver, near its westerly terminus, and known as the "Union Depot;" and to compel said defendant, and the Denver, South Park & Pacific Railroad Company, to remove the obstructions

which they had erected and placed in said street, and the other streets and alleys mentioned in the complaint. Damages, general and special, were prayed for injuries alleged to have been sustained by the plaintiff, and for such as might be sustained before final judgment in the action. The complaint avers that plaintiff is the owner of certain lots described therein, which abut on the streets obstructed, on which are buildings for residence and business purposes; that his lots on Seventeenth street are situated beyond said obstructions from the business center of said city, so that, by reason of the obstructions therein, he, his tenants and other citizens, cannot pass continuously along said street to and from the business center of the city, as they otherwise could and were accustomed to do, but are compelled to go around the obstructions, and are thus made to travel a greater distance in passing to and from said business center. The complaint sets out in detail the history of the location of the Denver city town site, in the year 1859, upon the unsurveyed public domain; the survey, subdivision and platting thereof into lots and blocks, intersected by streets and alleys; the recognition and approval of said subdivision and plat by the residents of said town site, and by the authorities of the city of Denver; the incorporation of said city thereafter, under the name of the "City of Denver," by an act of the territorial legislature passed in 1861; the entry by the probate judge of Arapahoe county at the United States land office, in 1865, of said town site, under and in pursuance of the town-site acts of congress; the conveyance by said probate judge to the parties entitled thereto of the several lots and blocks occupied by them respectively, and the further conveyance in fee to the city of Denver, by said probate judge, of all the streets, alleys and public grounds located and set forth in said survey and plat. Plaintiff avers that, ever since the survey and subdivision of the town site, he has been a resident of Denver; but does not say that he was an occupant of

either of the lots alleged to be injured by the construction
of the union depot, or that he acquired his title thereto
from the probate judge, or from any of his successors in
office.    He asserts the legal proposition that the probate
judge, after his entry of the town site, and that the city
of Denver, since the conveyance to it of the streets, alleys
and public grounds referred to, held, and that said city
now holds, all the several streets and alleys surveyed and
set down in the said plat (which included those now ob-
structed), in trust, that the same should be ever kept and
used solely as public highways; and, upon the abolition
or vacating of any of said streets and alleys by lawful
authority, to release and convey over to the lawful own-
ers of the abutting lots all that part of the streets and
alleys so vacated, from the boundary of such lots to the
center of said streets and alleys respectively.

Prior to the happening of the grievances complained of
the city council of the city of Denver had, by an ordi-
nance passed on or about the 5th day of January, A. D.
1880, vacated a portion of the streets and alleys men-
tioned in the complaint, for the purpose of enabling said
defendant, the Union Depot & Railroad Company, to
build a union railroad depot at that point in the city, and
to erect and make such other structures and improve-
ments as were necessarily appurtenant to a union rail-
road depot.    By this ordinance parts of Seventeenth and
Wewatta streets were declared vacated, as were also the
alleys in the four blocks abutting thereon, upon which
the building and its appurtenances were to be constructed.
After describing the parts of the streets and alleys va-
cated, its language is that they "be, and the same are
hereby, vacated and abolished, and the same appropriated
to the Union Depot & Railroad Company and its succes-
sors, for its and their sole use, occupancy and benefit, so
long as it or its successors shall use the same for the pur-
poses of maintaining a union depot, with necessary tracks,
sidings and switches, leading to and from and about the

same, for the use of railroads, to be held, used and occupied henceforth by said company, its successors and assigns, for the uses and purposes aforesaid: provided, that if the said company, its successors and assigns, shall cease to use and occupy the said parts of said streets and alleys for the purposes aforesaid, then this grant to it and them shall cease and determine; but that the destruction of the proposed depot by fire shall not operate to determine this grant to it, its successors or assigns, unless it or they or either of them shall fail, neglect or refuse to build the same in a reasonable time after such destruction." While the plaintiff's lots abut on the streets vacated, none of them abut on the portions thereof vacated. The streets surrounding the several blocks in which his lots are situated remained open and unobstructed.

The ground stated in the complaint as the basis of the claim for special damages is that the plaintiff, on a certain day, was passing along Seventeenth street in a carriage, about his lawful business, and at the point in question was obliged to turn out of said street, and go around the obstructions placed therein, by a longer way than the lawful highway, and to pass over the railway tracks unlawfully placed in said street. The prayer of the complaint is that said ordinance be declared null and void; that the defendants mentioned be restrained from erecting further obstructions in or from occupying said streets and alleys; that they be required to abate and remove all obstructions which they have or shall have erected in Seventeenth street, or in any of said other streets and alleys, before final judgment; for $500 damages, and for other relief.

The defendants demurred to the complaint, on the ground that the matters and things therein stated were not sufficient in law to be answered unto. The court sustained the demurrer, and, plaintiff abiding thereby, the court gave judgment dismissing the action. Plaint-

iff then brought the cause to this court for review by writ of error. After the suing out of the writ of error the death of the plaintiff in error was suggested, and Emma C. Whitsett, executrix of the estate of the deceased, was duly substituted as plaintiff in error.

The errors assigned are that the court erred in sustaining the demurrer and in dismissing the complaint. The case presented differs in no material particular from the numerous cases wherein the authority of municipal corporations to vacate and abolish streets and alleys has been called in question. The rule established by these adjudications is that, in the absence of any constitutional restriction, the power of the legislature to vacate streets and highways, or to invest municipal corporations with this power, cannot be doubted. 2 Dill. Mun. Corp. § 666; *McGee's Appeal,* 8 Atl. Rep. 237, and authorities cited; *People v. Supervisors,* 20 Mich. 95; *Gray v. Land Co.* 26 Iowa, 387; *Hoboken v. Hoboken,* 36 N. J. Law, 540; *Brook v. Horton,* 68 Cal. 554.

Section 25 of article 5 of our state constitution prohibits the legislature from exercising this power directly. This section provides that " the general assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: * * * Vacating roads, town plats, streets, alleys and public grounds." But this instrument contains no prohibition against the delegation of this power to municipal corporations. On the contrary, the restriction against the vacating of streets and highways by local or special legislative acts is an implication of the power of the legislature to authorize such acts to be done. As held in *Paul v. Carver,* 26 Pa. St. 223, this power must reside somewhere in every well-regulated government. There being nothing in our constitution prohibiting its exercise, except by special legislative act, we conclude the various municipalities may exercise this power when duly invested therewith.

The city of Denver was invested by its original charter

of November 7, A. D. 1861, with authority "*to open, alter, abolish, widen, extend, establish, grade, pave, or otherwise improve and keep in repair, streets, avenues, lanes and alleys, sidewalks, drains and sewers.*" Laws 1861, p. 487. This provision has been continued in the several amendments since made, including the amended charter approved April 6, 1877. Section 40 of the latter act provides that " the city council shall have power, within the jurisdiction of the city, by ordinance not repugnant to the constitution of the United States or the constitution of the state of Colorado," "to open, alter, abolish," etc., "streets, avenues, lanes and alleys." While the invalidity of this ordinance was asserted by the plaintiff, he did not question its formal and legal adoption by the city council.

The point is made by counsel for plaintiff in error that the city council was not authorized by its charter to grant the exclusive right of occupancy of the streets vacated to a private corporation, and to authorize the erection of permanent obstructions therein. A municipal corporation is not warranted by law, in exercising its power to vacate streets in an arbitrary manner, and without regard to the interest and convenience of the public, or of individual rights. But when the power to vacate exists and has been exercised with due regard to the interests both of the public and of private rights, the fact that the vacating ordinance provides for the use which is to be made of the street, or the portion thereof vacated, does not aid a property-holder who seeks to annul the ordinance, on the ground that he is interested in keeping the street open. The object to be accomplished in the present case may fairly be said to be one of great interest and convenience to the public. The establishment and construction of a union railroad depot for the use of all railroads entering within or centering in the city is a convenience not only to all residents of the city, but to the public generally. We are therefore of opinion that the

privileges granted to the Union Depot Company afford
no ground for equitable interposition. If the plaintiff
suffered no special injury peculiar to himself, and dis-
tinct from the general inconvenience experienced by the
public, by the acts complained of, he has no standing in
equity for injunctive relief. High, Inj. § 528.

The rule laid down in *City of Chicago v. Building
Ass'n*, 102 Ill. 393, and in support of which many authori-
ties are cited, is that, for any act obstructing a public
and common right, no private action will lie for damages
of the same *kind* as those sustained by the general pub-
lic, although in a much greater degree. As we have al-
ready seen, none of the lots owned by the plaintiff abut
on those portions of the streets or alleys mentioned which
were vacated by the ordinance passed by the city council,
but all are situated in other blocks. The streets in front
of his several lots remained open and free from obstruc-
tions. These facts bring the case within the principle of
the authorities cited, and within the case of *City of East
St. Louis v. O'Flynn*, 10 N. E. Rep. 395, wherein the
court say: "Here plaintiff's lot is not adjacent to the
streets or alleys vacated. It is in another block. The ac-
cess to and egress from his lot is not affected by the va-
cating ordinance passed by the city. The street in front
and the alley in the rear of his property remain open as be-
fore, affording the same access to and egress from it. The
inconvenience that would be occasioned to the plaintiff
in going from the street in front of his house to a par-
ticular part of the city, on account of vacating and clos-
ing up certain streets and alleys in another block, is the
'same *kind*' of damage that would be sustained by all
other persons in the city that might have occasion to go
that way; and, although the inconvenience he may suf-
fer may be greater in degree than to any other person,
that fact would not give him a right of action."

For the reasons assigned we are of opinion that the

action of the district court in sustaining the demurrer and dismissing the complaint was proper. The judgment is therefore affirmed.

*Affirmed.*