## Waller, et al. v. Syck, et al.

(Decided January 11, 1912.)

### (Appeal from Pike Circuit Court.)

Roads—Effect of Change or Alteration in, on Status of Old Road—Reversion.— Where the location of a road is changed, the change

in its location in and of itself operates as an abandonment of the old road without any order of court to this effect, and the land occupied by the old road reverts to the owner of the land over which it ran, and he may close it.

W. H. FLANERY and ROSCOE VANOVER for appellants.

BUTLER & MOORE and N. J. AUXIER for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The appellees as plaintiffs below brought this suit in equity against the appellant, defendants below, asking for a mandatory injunction requiring the appellants to remove from a public road fences they had placed across it, and to open the road for public travel. They set up in detail the special damages they sustained by reason of the obstruction of the road. For defense, the appellants pleaded that a new road had been opened to take the place of the old road, and that when this new road was opened for public use they enclosed by fences the old road that was a part of the land owned by them.

Upon hearing the case, the lower court entered a judgment ordering appellants to remove the fences they had erected across the old road, or to establish gates in the fences where they crossed the road. From this judgment this appeal is prosecuted.

The records of the county court are not complete, but no question is raised about this. They show that "notice is given that at the August term, 1902, of the Pike County Court that a petition will be filed in said court asking for changes to be made in the public road on lower Chloe Creek, beginning opposite Allen Kline's and running up said lower Chloe Creek to the gap in the head of same, and thence down upper Chloe Creek to mouth of same, and up the river to James Hamilton's." The petition filed in the Pike County Court asked for "A change in the public road leading from the road from the lower Chloe Creek road, beginning opposite Allen Kline's, up said Chloe Creek to a gap in the head of same, thence down upper Chloe Creek to the mouth of same, and up the river to James Hamilton's, making such necessary changes in said boundary." The order appointing the Commissioners recites that "the Commissioners will make all changes necessary or convenient on said road, and will locate and describe by courses and distances the changes, and will report the convenience and incon-

venience to the public as well as individuals, and the names of land owners over whose land the proposed road runs, and shall state the commencement and termination of the changes, * * * " The report of the Commissioners is not in the record, but there is an order reciting that "The Commissioners having made and filed their report at a former term of this court, which was approved, it is now ordered and adjudged by the court that said road as reported by said Commissioners be and same is now established, which report fully describes the changes in said road as hereafter set out, as follows: * * * " This order described a number of changes at different points made in the old road, among them being the alteration at the point in controversy. There is another order of court showing that "Frank Waller (the appellant) be and he is allowed the sum of $250 for land and fencing new road or change on Chloe Creek, Pike County, Kentucky."

With the record in this condition, the question for decision is this—when by order of the County Court the location of a public road is changed, is it necessary to authorize the closing of the old road by the owner of the land over which the old road run that there should be an order of the County Court directing or permitting the old road to be closed, or, does the mere fact that a new road has been opened to take the place of the old road authorize the owner of land over which the old road run to close it, notwithstanding the fact that the closing of the old road will subject to inconvenience persons who had used it for public travel?

It is the contention of appellants that when the route of a road is changed by order of court duly made and a new road is opened to take the place of the old road, that it is not necessary that the notice, petition, report of Commissioners or orders of court should mention the fact that if the location of the road is changed and a new road is established on the proposed route to take the place of the old road that the old road will be closed, as the mere fact that the location of the road is changed in and of itself operates to close the old road when the road is opened in the new location. On the other hand it is insisted for appellees that although the location of a public road may be changed and a new road established, this does not authorize the closing of the old road in the absence of an order of court made in conformity to the statute permitting roads to be closed; and, as it

is admitted that no order of court was made directing the old road to be closed, it is said appellants over whose land the old road run had no right to obstruct it.

In considering these respective contentions, we set aside as of no moment the evidence of verbal agreements and arrangements about closing the old road made between the County Judge and the appellants, under which they claim the right to close the road, as public roads can only be opened, altered or closed in the manner pointed out in the statute.

Section 4289 of the Kentucky Statutes provides in part that: "All applications to have a new road opened or a former one changed or discontinued, or to have the privilege of erecting gates across any such road, shall be by petition to the County Court, signed by at least five land owners of the county, which petition shall set forth, in writing, a description of the road, and what part thereof is to be altered or vacated."

Section 4290 provides that notice shall be given before the petition is filed, setting out the day when it will be offered, and the substance thereof. Section 4292 provides for the appointment of Commissioners "to view the ground along which the road is proposed to be conducted; to view the old road and new route, if any alteration in the road is proposed; if a discontinuance, then to view that road; and if the petition be to erect gates across a road, then to view the place proposed for that purpose." Other sections regulate the practice and procedure when it is sought to open or establish a new road or to change or alter an old one or to discontinue a road, or to erect gates across a road. Nowhere in the statute do we find any provision defining what disposition shall be made of the old road when it is altered or changed and a new road established to take its place. Nor is there any statutory direction that the notice, petition or other proceedings seeking to change or alter a road shall provide for the closing of the old road in the event its location is changed and the new road established. It is very clear that when it is desired to open a new road or to discontinue a road, that the notice, petition, report of the Commissioners, and orders of court, must expressly designate or describe the road proposed to be opened or discontinued; and, if this is not done, the proceedings will be fatally defective. But, when the location of a road is merely changed for a part or all of its distance from one place to another, so that

it may be more convenient or accessible for public travel, as, for example, where the road is changed as in this case from the bed of a creek in which it run to a point nearby, a short distance from the bank of the creek, we do not think it is necessary that there should be any order of court authorizing the old road to be closed after the new one that takes its place has been opened for pub-- lic use. A change or alteration of this character is not the opening of a new road, nor is it the discontinuing of an old one. The old road remains—only its location has been changed. It is yet the same road, going to and from the same points and intended to serve the same public needs. In Thompson v. Crabb, 6 J. J. Mar., 222, in speaking of the difference between the alteration and the discontinuance of a public highway, the court said:

"There is a palpable distinction between the altera- tion and the discontinuance of a public highway; in the one case, the road is kept up, leading to the principal points, to the courthouse and warehouse, although it may be thrown by alterations, on different ground from that on which it was at first located; in the other, it is abol- ished altogether, the hands are exonerated from keep- ing it in repair, and it may be stopped up with impunity. The case before us is one for the alteration, and not the discontinuance of a road. The public roads of the several counties are to be known by regarding the points at which they start, and those where they terminate, according to the original establishment. So considered, there can be no difficulty in distinguishing between the alteration and the discontinuance of a road, either in whole or part."

But the argument is made that appellees, whose lands abutted on the old road and whose residence was close to it and to whom its location was very convenient, did not have the notice that the statute contemplates shall be given, that it was intended to close the old road when the changes in it were opened for public use. It is said that appellees offered no objection to opening a new road to take the place of the old one, but would have done so had they known or understood that when the changes were made the old road would be closed. It is probable that appellees did not fully understand that when the bed of the road was changed, that the old road could be closed without an order of court, or without some notice to them. But however this may be, the no- tice, the petition, and the orders of court all gave notice

to appellees and others interested that it was proposed to change the location of the road at certain places and it seems to us that this was reasonably sufficient notice that when the changes were made in the location of the road and the new road opened for use, that the place where the road formerly run would be abandoned as a road and closed. The purpose of the change was to abandon the old road—to give up its location for a better one. It could not fairly be understood or contemplated by any person that there should be two roads running within a few yards of one another, to and from the same points. There could of course be no reason for having two parallel roads within a few yards of each other or reason for keeping open and maintaining two roads; and, when the changes were made, and the new road opened, or rather the location of the old road transferred from the old to the new place, this in and of itself operated to work a closing or abandonment of the old road. No order of court was necessary directing or authorizing or permitting the place where the old road formerly run to be closed. Its abandonment by the county authorities as a road operated to close it, as its abandonment was accomplished in the manner provided for in the statute.

As to whether the ground occupied by the old road was owned by the county or by appellants, the record does not show. But, in the absence of any showing to the contrary, we will presume that the county only acquired an easement over the ground occupied by the old road for the use of the public; and, this being so, when its use was abandoned by the county, the ground that was occupied by the road reverted to the appellants, who own the land on both sides of and over which it run. It is very well settled that when land is taken for a highway, the owner is entitled to the land, subject to its use by the public; and, when it ceases to be used by the public, the right of the owner to it becomes fixed. In other words, the abandonment of the use invests the owner of the land with the right to the possession, which he had surrendered for the public use. West Covington v. Freking, 8 Bush, 121; Bradbury v. Walton, 94 Ky., 163; Louisville, etc., R. Co. v. Hess, 92 Ky., 407.

Wherefore the judgment is reversed with directions to dismiss the petition.