The better opinion seems to be that to have suffered in a greater degree than the public is to have received special and peculiar damage. 20 R.C.L. p. 462, "Nuisances," sec. 77, n. 20, 1; 31 Am. Dec. 134, note. The loss of the meat by Blanding constitutes a special injury, particularly in the making of twenty-two trips daily, which also constitutes a greater degree of injury than that suffered by the general public.
Plaintiff Filbey will be required to travel a more circuitous route, to wit, a distance of nine and three-fifths miles each day.
The weight of authority supports the rule that an obstruction of a street or highway, requiring travel by a more circuitous route, constitutes a special injury sufficient to support an action by an individual affected by such obstruction. Sloss Sheffield Co. v. Johnson, 8 L.R.A. (N.S.) 226, and note; Husband v. Cotton, L.R.A. 1917A, 1150, and note.
And as to plaintiffs Rhoads and Smith, in the loss of customers that have already dealt with complainants, the overwhelming weight of American authority sustains the rights of action. 13 L.R.A. (N.S.) 253, note; 13 R.C.L. 234-5, "Highways," sec. 197, n. 12, 13.
Special injury must be substantial, but it is not necessary that it be considerable. 29 Cyc. 1212; Brown v. Watson, 74 Am. Dec. (Me.) 482.
If complainant has property or business within the vicinity of the obstruction, which is injured by reason of the interruption of convenient access to it, the right interfered with is a private property right, and he may maintain an action for damages. Aldrich v. Minneapolis, 53 N.W. (Minn.), 1072.
Whether special injury sustained depends upon the facts in each particular case. 29 Cyc. 1213; 13 R.C.L. 229; Fogg v. Nevada etc. Ry., Co., 20 Nev. 429.
But plaintiffs, as taxpayers, may join and maintain the action without a showing of special injury. Pitt v. Scrugham, 44 Nev. 418,426; 13 R.C.L. 225, "Highways," sec. 190, n. 14, 18; 19 R.C.L. 1163, "Mun. *Page 55 
Corps.," sec. 438, n. 7; 4 Ban. Code Plead. 3463; 4 Pom. Ea. Jur. 4126, sec. 1776, n. 72; 28 Cyc. 1744; Crompton v. Zabriskie,101 U.S. 601, 25 L.Ed. 1070; Murray v. City of Allegheny, 136 Fed. 57; Clouse v. San Diego (Cal.), 114 P. 573; 19 R.C.L. 1164, "Mun. Corps.," sec. 438, n. 8; Davenport v. Buffington, 97 Fed. 234, 46 L.R.A. 377; Spencer v. School District, 22 Am. Rep. 268; Roberts v. Louisville (Ky.), 17 S.W. 216; 13 L.R.A. 844; Brockman v. Creston (Ia.), 44 N.W. 822; Briggs v. Borden (Mich.),38 N.W. 712; Cummings v. St. Louis (Mo.), 2 S.W. 130; Hill v. Hoffman (Tenn.), 58 S.W. 929; Porter v. Johnson (Tex.), 140 S.W. 469; O'Melviny v. Griffity, 171 P. 934; Milligan v. Miles City (Mont.), L.R.A. 1916c, 395; Herald v. Board of Education (W. Va.), 31 L.R.A. (N.S.), 588; Perry Pub. Lib. Asso. v. Lotsitz (Okla.), 45 L.R.A. (N.S.), 368; Nerlien v. Villate of Brooten (Minn.), 102 N.W. 867; Adams v. Brenan (Ill.), 52 N.E. 314, 42 L.R.A. 718, 69 Am. St. Rep. 222; Schiffman v. St. Paul (Minn.),92 N.W. 503; Tompkins v. Pallas, 95 N.Y.S. 875; Keen v. Waycross (Ga.), 29 S.E. 42; Sugar v. Monroe (La.), 59 L.R.A. 723; Lewis v. Batemen (Utah), 73 P. 509; 29 C.J. 533; 71 A.D. 312, note; Porter v. Johnson (Tex.), 140 S.W. 469; Patterson v. Tp. Board (Mich.),201 N.W. 188; Branson v. I.W.W., 30 Nev. 270; 28 Cyc. 1737; 4 Ban. Code P. 3466; 28 Cyc. 1744; McIntyre v. Board of Coms. (Colo.), 61 P. 237; State v. Des Moines (Ia.), 65 N.W. 818, 59 Am. St. Rep. 381, 31 L.R.A. 186; Frederick v. Doughlas County (Wis.), 71 N.W. 798; Mueller v. Eau Claire County (Wis.),84 N.W. 430; 32 C.J. 259; Dennison v. City of Kansas (Mo.), 8 S.W. 429.
A taxpayer may sue without showing special injury or interest when the attorney-general, whose duty it is to appear, fails to do so. State ex rel. v. Cunningham (Wis.), 53 N.W. 35, 35 Am. St. Rep. 27, 17 L.R.A. 145; Keen v. Waycross (Ga.), 29 S.E. 42; White Eagle Co. v. Gunderson (S.D.), 205 N.W. 614, 43 A.L.R. 397, 401, 402, 404; 32 C.J. 48.
The power to alter and vacate streets, conferred by *Page 56 
the city charter, was not reasonably exercised. It will be noted that the charter confers a mere grant of power without specifying the manner in which it shall be exercised. Stats. 1925, 77, 82, subd. 12. See 1 McQuillan Mun. Corp. 823, 825. An ordinance of general application should have been enacted providing for proper petition, notice to parties affected, and an opportunity for objections. 29 C.J. 506, 507, 509, 510, 523; McCarl v. Clark Co. (Ia.), 148 N.W. 1015; Rock Castle County v. Norton (Ky.),225 S.W. 1079; Stats. 1911, 176, 180; Rev. Laws, sec. 963, Stats. 1921, 36; Rev. Laws, sec. 3015, Stats. 1917, 55; Stats. 1915, 392; 1 McQuillan Mun. Corp. 831, 832; Barrow et al. v. Bradley, Mayor, et al., 227 S.W. 1017; City of Indianapolis v. College Park Land Co. (Ind.), 118 N.E. 356; Mitchell v. St. Louis, I.M. 
S. Ry. Co. (Mo.), 92 S.W. 111; Mitchner et al. v. City Com'rs. of City of Okmulgee et al. (Okla.), 228 P. 159; City of Delphi v. Evans (Ind.), 10 Am. Rep. 12; 1 McQuillan Mun. Corp. 822-823.
The city holds its streets in trust for the use of the public, and cannot dispose of the same for the benefit of individuals. 19 R.C.L. 785-6, "Mun. Corps.," sec. 91, n. 20, 1; Marietta Chair Co. v. Henderson (Ga.), 49 S.E. 312; Smith v. McDowell (Ill.), 22 L.R.A. 393; Van Witsen v. Cuten (Md.), 24 L.R.A. 403; New Haven v. R.R. Co. (Conn.), 18 L.R.A. 256; 28 Cyc. 622; Huron Water Works Company v. City of Huron (S.D.), 30 L.R.A. 848; 3 McQuillan Mun. Corp. 2512-3; 3 Thomp. Real Prop., sec. 2911; Urch v. Portsmouth (N.H.), 44 A. 112; Southport v. Stanley (N.C.),34 S.E. 641; 3 McQuillan Mun. Corp. 2990; Lerch et al. v. Short, Mayor, et al. (Ia.), 185 N.W. 129; 2 Page Contrs., sec. 905, 1603-5; Bradley v. R.R. Co., L.R.A. 1917C, 225; City of Princeton v. Poole (Ky.), 246 S.W. 819.
Appellants have at all times, from the inception of this action, mistaken the theory of the case. The present case raises a question as to the right of a municipality to alter a street, as distinguished from the right to vacate a street. 1 Elliott Roads and Streets (4th ed.), 513, sec. 452, n. 1 and 2; Waller v. Syck, 146 Ky. 181, 142 S.W. 229, at p. 231.
We have in the instant case all of the elements of an alteration proceeding: An existing street; the dedication of a new street connecting at both ends with the old street; and the conditional vacation of the old street. The old street remains — only its location has been changed.
Authority is granted the city of Las Vegas to alter streets by the provisions of subdiv. 12 of sec. 31 of the city charter, as amended by Stats. 1925, 82. Therefore, the resolution of the board of city commissioners was equivalent to an act of the legislature altering said street. City of Lynchburg v. Peters (Va.), 133 S.E. 674, at 681.
It was proper for the board of city commissioners to make an agreement with the subdividers that the old road should be vacated in consideration of the dedication of the new road, constituting an alteration of the old one. Jenkins et al. v. Riggs et al. (Md.), 59 A. 758, at 762. The vacating ordinance may provide for the use which is to be made of the street, or the portion thereof vacated. IV McQuillan Mun. Corp. (2d ed.), 284, sec. 1529, n. 86.
The proceedings in this case were not void simply because they were taken by resolution instead of by ordinance. IV McQuillan Mun. Corp. (2d ed.), 283, sec. 1529, n. 82. Neither is notice required. 29 C.J. 509, sec. 208, n. 71; 1 Elliott Roads and Streets (4th ed.), 516, sec. 453, n. 18.
That Blanding will suffer loss of meat by reason of the alteration of the street is a mere conclusion of the pleader, and therefore is not a sufficient allegation. Fogg v. N.C.O. Railway,20 Nev. 429, at 437.
As to plaintiff Filbey: "The authorities are in conflict *Page 58 
as to whether the necessity of taking a longer or more circuitous route of itself constitutes special damage. A negative answer to this question is quite generally given." 13 R.C.L., "Highways," sec. 194, n. 15, and cases cited; Canady v. Coeur D'Alene Lb. Co. (Ida.), 120 P. 830, at 833; Hitch v. Scholle (Cal.), 181 P. 657. Being required to travel a more circuitous route is no ground for objection to alteration proceedings. 1 Elliott Roads and Streets (4th ed.), sec. 457, n. 30.
A careful examination of the authorities cited to show loss of business to Rhoads and Smith to be special injury will show that in all those cases access to the plaintiff's premises was cut off or greatly impeded. No such state of facts are made to appear with reference to the places of business of Smith or Rhoads. Note: "Loss of customers as element of damages from obstruction of highway," 13 L.R.A. (N.S.), 253.
As to the right of taxpayers to maintain an action without showing of special injury, see Simons v. City and County of San Francisco (Cal.), 47 P. 453. In examining the cases cited by the plaintiffs upon this point we do not find any case where a taxpayer was allowed to maintain a suit to enjoin the alteration of a street, the vacation of a street, or the commission of a threatened nuisance through the obstruction of a street.
As to the right of a taxpayer to sue where the attorney-general refuses to perform his duty, it will be seen that the object of this action is to restrain an alleged private injury. Such action must be maintained by the individual as an individual and not as a taxpayer. An individual cannot maintain an action to enjoin a public nuisance. 2 Elliott Roads and Streets, sec. 850-1, n. 65, 66, citing Davis v. Spragg (W.Va.),79 S.E. 652, 48 L.R.A. (N.S.), 173; Simons v. San Francisco, supra. In any event the suit must be brought in the name of the state at the relation of the taxpayer or citizen. 32 C.J. 295, sec. 474, n. 21.
There is no sufficient allegation in the amended complaint that the alteration or vacation was made for private benefit. IV McQuillan Mun. Corp. (2d ed.), *Page 59 
sec. 1520, pp. 265-270; 13 R.C.L., "Highways," sec. 62, pp. 69, 70, and cases cited; 2 Elliott Roads and Streets (4th ed.), sec. 1183.
Finally, we submit that the case of Fogg v. N.C.O. Railway,20 Nev. 429, is decisive of the present case on all points.
Even though the appellants proceed along the theory that the vacation proceedings are void, then they would have only such rights and remedies as are afforded to plaintiffs in actions to enjoin public nuisances, as an unlawful vacation amounts to a public nuisance. 13 R.C.L. p. 76, 77, n. 5; Cummings Realty v. Deere, 14 L.R.S. (N.S.) 822. Likewise, any obstruction upon a street or highway is a public nuisance. 29 Cyc. 1177.
"As in other cases of public nuisance, a private individual has no right of action, either at law or in equity, because of the obstruction of a street or highway, unless he suffers some peculiar or special damage or injury, not common to the general public." 13 R.C.L. 227, par. 192, "Highways." See, also, 13 R.C.L. 75, par. 67, "Highways"; 20 R.C.L. 462, "Nuisances," sec. 77, n. 19; Fogg v. N.C.O. Ry., 20 Nev. 429, 23 P. 840; 29 C.J. 533, n. 89.
The weight of authority does not "support the rule that an obstruction of a street or highway, requiring travel by a more circuitous route, constitutes a special injury sufficient to support an action by an individual affected by such obstruction," but the weight of authority is to the contrary. Hitch v. Scholle (Cal.), 181 P. 657; Canady v. Coeur D'Alene (Ida.), 120 P. 830, syl. 7, 8; Mackey v. Aycock (Okla.), 201 P. 365; McKay v. Enid (Okla.), 109 P. 520, 30 L.R.A. (N.S.) 1021 and notes; Scrutchfield v. Choctaw C.R.R. Co. (Okla.), 88 P. 1048, 9 L.R.A. (N.S.) 496; Stoutemeyer v. Sharp (Ark.), 21 L.R.A. (N.S.) 74; Board of Education v. *Page 60 
Gilleland (Mich.), L.R.A. 1916E, 468; notes to 11 Ann. Cas. 287-291; notes to Re Hull, 49 A.L.R. 330.
The general rule is that one whose property does not abut on the closed section has no right ordinarily to compensation for the closing or vacation of a street, if he still has reasonable access to the general system of streets. See notes to Re Hull, supra; Liermann v. Milwaukee, 13 L.R.A. (N.S.) 253, notes; Dantzer v. Indianapolis, 34 L.R.A. 769, and notes; Cran v. Laconia (N.H.), 57 L.R.A. 282.
As to the right of plaintiffs as taxpayers to maintain the action without showing special damage, we particularly call attention to note 14 of the same paragraph in 19 R.C.L. quoted by appellants, at pages 1164-5, and the cases cited thereunder.
There are no decisions holding that a taxpayer may sue, without showing special injury or interest, when the attorney-general fails to do so. The decision in State ex rel Lamb v. Cunningham (Wis.), 53 N.W. 35, 17 L.R.A. 145, held that where the attorney-general refused to proceed with an action in the name of the state, the court had jurisdiction to make an order allowing the relator Lamb to proceed with the action in the name of the state. The law is settled that such an action must be brought in the name of the state, and the state is the only proper party plaintiff thereto. 32 C.J. 295, par. 474.
"Where a municipal council is given power to legislate and statute is silent as to mode, an enactment by the council is valid whether in form of resolution or ordinance." 19 R.C.L. 895, n. 16.
The mere fact that private individuals are benefited by the vacation does not affect the order of vacation, even though the vacation proceedings are had with the intention of devoting the land to private purposes. 13 R.C.L. 68, n. 1, 5. See, also, notes to Tomlin v. Cedar Rapids, 22 L.R.A. (N.S.) 530; Tilly v. Mitchell (Wis.), 98 N.W. 969. Nor will the motives of the tribunal be inquired into. 13 R.C.L. 70, par. 62, "Highways," n. 13; 29 C.J. 506, n. 35. *Page 61 
The proceedings of the city commissioners complained of in this action amounted to an alteration rather than a vacation of the street in question. And there is a distinction between the two. See note to 26 L.R.A. 827.
 STATEMENT OF FACTS
This action was brought to enjoin the respondents from vacating a portion of a certain street in the city of Las Vegas. Demurrers interposed to the amended complaint were sustained by the court, and the plaintiffs in the court below, appellants here, were given ten days to again amend the complaint. Upon their failing to amend within the time designated, judgment was entered in favor of defendants, for their costs, and dissolving the restraining order theretofore issued. The appeal is taken from this judgment and also from the order sustaining the demurrers.
The amended complaint, which will hereinafter be referred to as the complaint, alleges that that portion of the prolongation of Main Street, 286 feet south of the southeast corner of Main and Garces Streets, in the city of Las Vegas, Clark County, Nevada, to the common corner of sections 3 and 4, township 21 S., range 61 E., M.D.B. and M., is, and was at all times herein mentioned, a public street about 80 feet in width in the city of Las Vegas, in common use by the public as a street; that at a meeting held on or about the 5th day of August, 1926, the board of county commissioners approved a certain plat of South addition to the city of Las Vegas, which said plat was then and there presented by the defendants W.E. Hawkins and Leo McNamee and so approved at their special instance and request, and that thereafter, to wit, on or about the 13th day of August, 1926, said plat bearing the approval of said board, attested by the signature of said defendant W.B. Mundy, as mayor pro tem, was filed for record in the office of the county recorder of said Clark County; that said South addition, as shown on said plat, adjoins that portion of the prolongation of Main Street on the easterly side thereof; that as a part *Page 62 
of said proceedings said board of county commissioners, at the special instance and request of said defendants W.E. Hawkins and Leo A. McNamee, ordered that said portion of the prolongation of Main Street (hereinafter referred to as the present street) be vacated to take effect upon the construction of the street (hereinafter referred to as the proposed street) as outlined in said plat, along Main Street as designated on said plat; that the recorded minutes of said meeting relating to said approval and order of vacation are in words and figures as follows: "At this time W.E. Hawkins and Leo A. McNamee appeared before the Board and presented for the approval of the Board the plat of the proposed South Addition to the City of Las Vegas. After due consideration of the matter it was ordered upon motion of Commissioner Elwell, seconded by Mayor Hesse, that Mayor Pro Tem W.B. Mundy be, and he is hereby directed to approve said plat and the City Clerk is hereby directed to attest the signature of the said Mayor Pro Tem, and it is further ordered that that portion of the prolongation of Main Street commencing at 286 feet south of the southeast corner of Main and Garces Streets, in the City of Las Vegas, Clark County, Nevada, to the common corner of sections 3 and 4, Township 21 South, Range 61 East, M.D.B. and M. is hereby vacated, same to take effect upon the construction of the street as outlined in the plat of the South Addition to the City of Las Vegas, along Main Street as designated on said plat."
That on or about the 23d day of August, 1926, certain citizens, taxpayers, and owners of real property affected by the action of said board of city commissioners filed with the clerk of said board a petition protesting against the same; that said proposed street lies parallel to said present street a distance of about 80 feet easterly therefrom, and as shown on said plat is connected diagonally at the northerly and southerly ends with said present street; that the vacation of said present street upon the construction of said proposed street would require the traveling public to proceed by way of said diagonal connections along said *Page 63 
proposed street an additional distance of about 320 feet each way of travel; that the public would, in the event of such vacation, receive no benefit whatsoever therefrom, but would suffer inconvenience, loss of time, and greater expense by reason of said additional travel; that property rights and values would be damaged and impaired; that the angle of said diagonal connection at the northerly end of said present street is 45 degrees, and that the angle of said diagonal connection at the southerly end thereof is 105 degrees; that in traveling a southerly or westerly direction at said southerly diagonal connection, it would be necessary to pass directly in front and across the path of approaching traffic proceeding northerly at said last-mentioned point, whereby, of necessity, the speed of travel would be reduced and the hazard of accident and collision would be greatly increased, particularly in the event of a fire at a point southerly and westerly from said present street, over which it would be necessary for members of the city fire department to pass in approaching the location of said fire; that about 150 motor vehicles travel each day in and upon said present street; that parallel and adjoining said present street, on the westerly side thereof, are the railroad tracks and right of way of the Union Pacific System, a railway corporation, over which said tracks and right of way said corporation daily operates its trains in the course of its regular business; that plaintiffs are informed and believe, and upon information and belief allege, that the defendant First State Bank of Las Vegas, Nevada, Incorporated, is the holder of the legal title to the real property shown on said plat, but that it holds the same in trust for the benefit of certain persons whose true names are to the plaintiffs unknown and who are hereinafter referred to as the subdividers; that prior to the order of vacation the city of Las Vegas and its said board of city commissioners without consideration or benefit to the public, but to the serious inconvenience, detriment, and injury to the public, agreed with the defendants First State Bank, W.E. Hawkins and Leo A. *Page 64 
McNamee, and said subdividers, that said present street if and when vacated, as aforesaid, shall be added to a strip of land 80 feet in width adjoining said present street on the easterly side thereof, and said land so combined shall be subdivided into lots, having a depth of 160 feet adjoining said proposed street on the easterly side thereof and said railroad right of way on the westerly side thereof, as shown on said plat; that said present street as a part of said lots shall be and become the property of said subdividers, and said lots as such be sold as industrial sites at much higher prices, to wit, $18,000 more than could be obtained for that portion of said lots lying between the present street and said proposed street, as shown on said plat; and that the proceeds from said sale or sales shall be kept and retained by said subdividers for their express use and benefit; that said order of vacation was made pursuant to said agreement, and for no other purpose; that one or more of said lots, including a portion of said present street, have been sold pursuant to said agreement; that said present street and said proposed street are located in a depression below the surface of the surrounding land, so that rainfall and flood waters flow into and upon the same; that no outlet exists for the drainage of said waters, which remain in and upon said depression until absorbed by the underlying soil and diffused by evaporation, frequently requiring a period of ten days or more; that said soil is a clay loam about five feet in depth, overlying a layer of hardpan; that at all of the seasons of the year said soil is waterlogged by water overflowing from artesian wells within a radius of one mile therefrom, which said water permeates said soil from a depth of three feet to eighteen inches from the surface thereof; that when said soil is overflowed and permeated by the waters aforesaid, it becomes glutinous and viscid, so that vehicles traveling the same become embedded and are unable to proceed without assistance; that surrounding land slopes upward for a distance of about three-fourths of a mile, and that said waters cannot be drained without the construction *Page 65 
of a flume or ditch about three-fourths of a mile in length at a cost of, to wit, $8,000; that for a period of twelve years last past said defendant the city of Las Vegas has from time to time deposited in and upon said present street large quantities of gravel and gypsum, to wit, 400 yards, of the value, for material and labor, to wit, $1,200; that as said gypsum and gravel was so deposited it sank into the underlying soil and became compact, and now constitutes a solid and substantial supporting base for said present street, and that travel thereon can now proceed without difficulty or interruption at all seasons of the year and without regard to the conditions aforesaid; that the conditions obtaining with reference to said present street as aforesaid are the same as those obtaining with reference to said proposed street, and that said proposed street, for the reasons aforesaid, will not and cannot be placed in as permanent and substantial condition of repair as said present street is now without a like amount of material and labor, at a like cost, and for a like period of time; that it will be necessary to expend a like amount of material and labor, at a like cost, to wit, $1,200, to place said proposed street in a fit condition for travel, which cost will be paid by said defendant the city of Las Vegas; and that thereby the taxes of plaintiffs will be increased.
It is alleged that said defendants have duly performed all the conditions on account of said order of said board of city commissioners; that defendants have threatened, now threaten, and will, unless restrained pursuant to said order, vacate said present street, will erect obstructions to travel in and upon and across the same, and will require persons desiring to use the same as a street to travel over said proposed street or other streets by longer and more circuitous routes, and will pursuant to said agreement permit their subdividers to sell, for their own use and benefit, the real property so vacated as aforesaid; that plaintiffs, and each of them, are citizens, residents, and taxpayers of Las Vegas, and are owners of real and personal property situated in said city. *Page 66 
It is further alleged that plaintiff Blanding conducts a wholesale and retail meat business in said city; that he resides on a highway connecting with the southerly end of said present street about 1,300 feet westerly therefrom; that in connection with his said business he conducts a slaughter and packing house upon the premises where he resides, and daily (except Sunday) transports meats from his said slaughter and packing house to his retail store in the business district of said city; that in the course of his said business he is obliged to make and does make, to wit, 22 trips daily between his place of residence and the said retail store; that said present street is the nearest and most accessible route between said last-mentioned points; that said meat is of a perishable nature and will frequently in hot weather become impaired as to preservation within a few minutes if not transported within the usual time; that to prevent the same from becoming tainted and unfit for sale it is necessary to transport the same with the least possible delay from said slaughter and packing house to said retail store; that if required to travel over said proposed street the value of said meat, by reason of increased distance of travel and decreased speed necessitated by increased risk of accident and collision aforesaid, would be impaired, and if unduly delayed on account of any of said conditions or reasons alleged would become unfit for use and sale.
It is further alleged that plaintiff J.L. Filbey conducts a dairy and resides on a highway connecting with the southerly end of said present street about 4/5 of a mile westerly and about 3/5 of a mile northerly therefrom; that he has about 125 customers in said city of Las Vegas to whom he daily delivers milk and dairy products; that in the course of his said business he is obliged to make and does make 8 trips (a distance of about 2 2/5 miles each way) daily between his dairy aforesaid and the business and residence portion of said city of Las Vegas, where said deliveries are made; that said present street is the nearest and most accessible route between his said dairy and the points last aforesaid, *Page 67 
except certain streets shown on "Exhibit A," which are unimproved and impassable at certain seasons of the year by reason of the conditions alleged in paragraph XVI herein; that the next nearest route between said dairy and the points last aforesaid is a distance of 3 3/5 miles; that for the reasons hereinbefore in this amended complaint set forth, said proposed street will be unsafe and unfit for travel, whereby plaintiff will be obliged to travel a much longer and more circuitous route in the conduct of his said business, to wit, 1 1/5 miles each way, or an additional distance of 9 3/5 miles each day; to his special injury.
It is further alleged that plaintiff W.S. Rhoads conducts a garage, repair and supply shop, and oil and gasoline station, on that portion of Main Street (being a continuation northerly of said present street) about 150 feet southerly from its intersection with Fremont Street running easterly and westerly in said city of Las Vegas; that 5 blocks easterly from said intersection, said Fremont Street intersects Fifth Street, running northeasterly and southwesterly in said city; that said portion of Fremont Street and said Fifth Street running southwesterly constitutes a portion of a Nevada state highway commonly known as the "Arrowhead Trail," which is the main traveled highway between the city of Salt Lake, Utah, and the city of Los Angeles, Cal.; that the continuation southerly of said present street joins and intersects said Fifth Street running southwesterly, at a point about 3/4 of a mile south of present street; that said Main Street (including said present street and its continuations northerly and southerly as aforesaid), from its intersection with said Fremont Street to its intersection with said Fifth Street, constitutes a much shorter route between said last-mentioned points, and many travelers over said Arrowhead Trail, by reason of such shorter route, pass over the same and become customers of plaintiff at his place of business aforesaid; that for the reasons hereinabove set forth in this complaint, said proposed street will be unsafe and unfit for travel, whereby the travel aforesaid *Page 68 
will be diverted by way of said Fremont and Fifth Streets, and plaintiff will lose the patronage of his customers aforesaid; that between the intersection of Main and Fremont Streets and the intersection of Fremont and Fifth Streets aforesaid are located four other garages, repair and supply shops, and oil and gasoline stations, at which travelers may obtain service and supplies so furnished by plaintiff as aforesaid; that between said city of Los Angeles and points east of Nevada over said Arrowhead Trail, certain corporations, firms, and individuals transport passengers in motor busses for hire; that the drivers of said busses have heretofore traveled and now travel over said shorter route whereby they have become and now are customers of plaintiff as aforesaid; that said drivers heretofore have paid and now pay to plaintiff for services performed and supplies furnished as aforesaid, to wit, $225 per month; that said drivers have threatened and stated to plaintiff that they will, if said present street is vacated as aforesaid, travel over Fremont and Fifth Streets, aforesaid, cease to be customers of plaintiff and patronize one or more of said garages on Fremont Street, to his special injury.
It is further alleged that plaintiff J.S. Smith conducts a garage, repair and supply shop, and oil and gasoline station on said Main Street about 500 feet southerly from said intersection of Main and Fremont Streets; that for the reasons alleged in paragraph XXI of this amended complaint, plaintiff has had and now has the patronage of travelers over said shorter route, and that for the reasons aforesaid such patronage will be discontinued, to his special injury.
The prayer is for an injunction enjoining defendants from vacating said present street; from placing any obstruction or obstructions in, upon, or across said street, or maintaining the same; from selling said street or any part thereof; from doing any other act or thing to prevent the free and unobstructed use of said street by the public; for a restraining order, restraining the defendants from doing any of the acts or things as prayed for herein, until the further order *Page 69 
of the court; for an interlocutory injunction; for their costs; and for such other relief as the court may deem just and proper.
The demurrers were sustained upon the ground that the complaint failed to state facts to constitute a cause of action against said defendants or either of them.
 OPINION
1, 2. The ruling of the lower court was proper. The complaint does not show that appellants will suffer any injury special to themselves or different in kind from that which will be sustained by the general public. A showing that an injury of this kind will be sustained is essential to enable a person to maintain an action of this character. Symons et al. v. City and County of San Francisco et al., 115 Cal. 555, 42 P. 913, 47 P. 453; Whitsett v. Union D. R. Co., 10 Colo. 243, 15 P. 339; Hammond v. County Commissioners, 154 Mass. 509, 28 N.E. 902; City of Chicago et al. v. Union Building Association, 102 Ill. 379, 40 Am. Rep. 598; City of Gary v. Much, 180 Ind. 26, 101 N.E. 4; Heller v. Atchison, etc., R. Co., 28 Kan. 625; Nelson v. Swedish Evangelical Lutheran Cemetery Ass'n, 111 Minn. 149, 126 N.W. 723, 127 N.W. 626, 34 L.R.A. (N.S.) 565, 20 Ann. Cas. 790; Greene v. Goodwin Sand, etc., Co., 72 Misc. Rep. 192, 129 N.Y.S. 709; Zettel v. West Bend, 79 Wis. 316, 48 N.W. 379, 24 Am. St. Rep. 715.
The rule deducible from the general current of authority is stated in 13 R.C.L. at pages 75 and 76 as follows: "To entitle a property owner to injunctive relief against the vacation of a street or highway he must show that he will suffer a special or peculiar injury, and not merely such inconvenience as is cast upon all other persons of that neighborhood."
The case at bar, in so far as the cause of action is based upon the vacation of the street and consequent *Page 70 
damage to the business of appellants, is identical in principle with Fogg v. N.C.O. Railway, 20 Nev. 429, 23 P. 840, 842. In the latter case the action was to abate a public nuisance alleged to consist of the maintenance of a section of railroad and railroad tracks and the operation of trains thereon, on a street on which the plaintiff's residence abutted. Damages therefrom were specifically alleged and an abatement of the nuisance and an injunction prayed for. The court applied the foregoing principle, and in the course of its opinion quoted approvingly from Wood on Nuisance, sec. 646, as follows: "The courts very wisely have unswervingly adhered to the rule that an individual, in order to be entitled to a recovery for injuries sustained from a public nuisance, must make out a clear case of special damages to himself, apart from the rest of the public, and of a different character, so that they cannot fairly be said to be a part of the common injury resulting therefrom."
The question of injury to the real property belonging to appellants, such as shutting off ingress or egress to and from the same, or otherwise injuring their property, is not made by the complaint. Such injury could hardly be claimed for the reason that all of the places of business of the appellants are shown by the complaint to be located some distance from the portion of Main Street vacated by the order of the city authorities. Special injury to the business in which each of the appellants is engaged is the principal contention.
The general averments in the complaint, such as inconvenience to the public by reason of having to travel a greater distance over the proposed street, damage to property rights of adjoining and adjacent owners, increased hazard of accident and collision, do not merit any consideration. The latter are merely conclusions of law, and the former is something which affects all the public having occasion to travel on the new street. The allegations in regard to injury likely to obtain to the appellant Blanding's wholesale and retail meat business in the city of Las Vegas are not, in our opinion, *Page 71 
sufficient to constitute that special injury required to be shown. The probability that his meat would become impaired or unfit for sale, if he is required to travel over the proposed street during hot weather, is somewhat remote under the facts stated. The increased distance is only 320 feet. This distance is inconsequential under modern modes of transportation, as is the fact alleged that less speed would be necessitated on account of the increased risk of accident and collision. The fact alleged that he makes 22 trips a day adds nothing to the risk of injury. This is merely more of an inconvenience to him than to others having occasion to travel it less frequently. While unfavorable conditions for travel over the proposed street are alleged, it does not appear that it is impassable, or that such conditions will be permanent.
3. It is alleged that the present street is the nearest and most accessible route between appellant Blanding's slaughter and packing house and his market in the city of Las Vegas, but it is not alleged that there are not other routes over which he could transport his meat to the market without risk of injury. The facts stated should be explicit and sufficient to enable the court to determine whether there is any danger of special injury to the appellant. Mere fears of contemplated injury are not sufficient. As stated in Fogg v. N.C.O. Railway, supra: "Injunctions ought not to be granted in cases of this character, unless `the threatened use of property or the act sought to be restrained is clearly shown to be such as leaves no doubt of its injurious results; such results as are recognized to be substantial legal injuries. The bill must set forth such a state of facts as leaves no room for doubt upon the question of nuisance, for, if there is any doubt upon that point, the benefit will be given to the defendant.'"
No facts from which special injury to the business of appellant Filbey can be clearly concluded are alleged in the complaint. It appears from the complaint that appellant Filbey, like appellant Blanding, does not reside on the present street, but on a highway connecting *Page 72 
therewith, where he conducts a dairy. It is alleged that he makes eight trips each day from the place where he has his dairy to Las Vegas to deliver his dairy products, and on account of the proposed street being unsafe and unfit for travel will be compelled to travel 1 1/5 miles further each way over a more circuitous route to his special injury. It is clear that this is not such injury as the law contemplates of which an individual may complain. It is not injury of a different kind from that suffered by the general public. As in the case of Blanding these allegations show merely an inconvenience of greater degree than to those who may travel that way less frequently.
4. Counsel for appellants contend that the weight of authority establishes the rule to be that an obstruction of a street or highway, requiring travel by a more circuitous route, constitutes a special injury sufficient to support an action by an individual. We are of the opinion that the weight of authority is decidedly the other way. Among the authorities recognizing the latter view are the following: Stoutemeyer v. Sharp, 89 Ark. 175,116 S.W. 189, 21 L.R.A. (N.S.) 74; Hitch v. Scholle, 180 Cal. 467,181 P. 657, 658; Whitsett v. Union Depot, etc.,10 Colo. 243, 15 P. 339; Newton v. New York, N.H. H.R. Co.,72 Conn. 420, 44 A. 813; Canady v. Coeur D'Alene, 21 Idaho, 77,120 P. 830; Houck v. Wachter, 34 Md. 265, 6 Am. Rep. 332; Nichols v. Inhabitants of Richmond, 162 Mass. 170, 38 N.E. 501; Tomazewski v. Palmer Bee Co., 223 Mich. 565, 194 N.W. 571; Smith v. Boston, 7 Cush. (Mass.) 254; Jacksonville, etc., Railroad Co. v. Thompson, 34 Fla. 346, 16 So. 282, 26 L.R.A. 410; Illinois Malleable Iron Co. v. Park Com'rs, 263 Ill. 446, 105 N.E. 336, 51 L.R.A. (N.S.) 1203; Dantzer v. Indianapolis Union R. Co.,141 Ind. 604, 39 N.E. 223, 34 L.R.A. 769, 50 Am. St. Rep. 343; Chicago N.W.R. Co. v. Railroad Commission, 167 Wis. 185,167 N.W. 266; 2 Wood Nuis. (3d ed.) sec. 701; 1 High on Inj. (4th ed.) p. 785.
While there are cases holding that an enforced circuity of route from a property owner's location to the outside *Page 73 
world works a special peculiar injury to him, independent of an actual injury to the premises, we are of the opinion that such cases are not in accord with better principle. They are subject to the criticism that the rule makes the person or municipality responsible for the nuisance alleged subject to a multiplicity of suits for the same act, a condition which the law abhors and seeks always to avoid. Hence the doctrine that where the obstruction complained of is common to the public, although some may be affected to a greater degree than others, the action for its removal must be by public prosecution.
5. The complaint states no cause of action as to appellants Rhoades and Smith. Their garages, repair and supply shops, oil and gasoline stations are not situated on the part of Main Street discontinued, but on Main Street some distance therefrom. The gist of their complaint is that the discontinuance of the present street and the unfavorable conditions on the proposed street will divert travel from the street where their respective places of business are situated, and consequently cause the loss of the patronage of their customers to the special injury of these appellants. It is not alleged that the proposed change in the street will make travel over the street on which their places of business are located impassable or even difficult, but it is alleged, in substance, that the unsafe and unfit condition of the proposed street will divert it to another street. The injuries predicated on these allegations are too remote, contingent, and uncertain to be called substantial legal injuries. Whether the results stated as feared will actually happen is speculative. Even if it could be reasonably concluded that such results would follow, the injuries to the appellants' business would not be that direct and immediate consequence of the acts complained of which is always essential, but dependent upon the public desire. Smith v. City of Boston, 7 Cush. (Mass.) 254.
As stated in Heller v. A., T. S.F.R. Co., 28 Kan. 625: "The benefits which come and go from the *Page 74 
changing currents of travel are not matters in respect to which any individual has any vested right against the judgment of the public authorities."
6. It is contended that appellants as taxpayers may join and maintain this action without showing special injury. This contention is untenable. The complaint does not present a case conferring on a taxpayer the right to sue. The rule governing such a case is correctly stated in 19 R.C.L. p. 1164, as follows: "* * * Except when the act sought to be enjoined is or will involve the assessment of a tax for an illegal purpose, a private citizen cannot maintain an action to restrain official acts, unless he can show that he will suffer an injury differing in kind and not merely in degree from that suffered by the public generally." "A taxpayer," said the court in Symons et al. v. City and County of San Francisco, "is permitted to maintain an action to restrain the improper diversion or use of the public funds, or to compel an official to do some act whose omission would increase his burden as a taxpayer. In both cases the ultimate object is the same — to escape the imposition of an increased taxation, which, except for his right of action, would be by direction or indirection illegally thrust upon him."
The rule is also set forth in 28 Cyc. pp. 1736, 1737. It is there stated: "It is well settled that a court of equity will in a proper case enjoin illegal or unauthorized acts of a municipal corporation, or its officers, and any resident or taxpayer who sustains a special injury different from that of the public generally may sue to enjoin the unauthorized or illegal act. A taxpayer cannot, however, maintain such a suit where he has not sustained or is not threatened with any injury peculiar to himself as distinguished from the public generally, as in such case the suit must be brought in the name of the state by the proper public officer. * * * And where it (the act of the municipality) is prejudicial to the rights of taxpayers, as such, as involving the levy of tax, creation of a municipal debt, or appropriation or expenditure of public funds, or in any way tending to *Page 75 
increase the burden of taxation, the great weight of authority is that if such action be illegal or unauthorized, taxpayers may sue to restrain it, without showing any special injury different from that sustained by other taxpayers, and may sue in their own names without making the attorney-general or other public officer a party."
7. The complaint does not present a case in principle conferring on appellants the right to sue as taxpayers. As we hold, the appellants are not specially injured in regard to their special vocations as alleged, and it does not otherwise appear that the act of the municipality vacating the present street and establishing the proposed street is unlawful or beyond its chartered powers. The fact that the action of the municipality was by order, instead of by an ordinance, does not make the act void or illegal as contended by appellants. The city charter provides as follows: "The said board of commissioners shall have the power * * * to lay out, establish, open, alter, widen, extend, grade, pave or otherwise improve streets, alleys, avenues, sidewalks, parks and public grounds and to vacate the same. * * *" Stats. of Nev. 1925, c. 56, pp. 77, 82, sec. 3, subd. 12.
The charter does not prescribe the mode by which the power to do any of these things must be exercised. It may be by ordinance, resolution, or order. Stats. of Nev. 1925, c. 56, pp. 77, 78, sec. 3. "When a municipal council is given power to legislate in regard to a particular subject matter, and the statute is silent as to the mode in which the power shall be exercised, an enactment by the municipal council is valid whether it is in the form of an ordinance or resolution." 19 R.C.L. p. 895; City of Chicago v. McKechney et al., 91 Ill. App. 442; McQuillan, Municipal Corporations (2d ed.) p. 283, sec. 1529, note 82.
There is in substance no difference between a resolution and an order. 19 R.C.L. 895; State v. Summers, 33 S.D. 40,144 N.W. 730, 50 L.R.A. (N.S.) 206, Ann. Cas. 1916B, 860. *Page 76 
There is not anything alleged in the complaint sufficient to show any misuse of power in vacating the present street and opening the proposed street. No fraud is alleged, nor do its allegations show any abuse of the discretionary power lodged by the charter in the city authorities. "The question of the necessity of closing a street or highway," as stated in 13 R.C.L. at pages 69, 70, "as distinguished from the question of public purpose or use, belongs exclusively to the legislative department of government. So where the power exists in a municipality, it is for the municipal authorities to determine when it shall be exercised, and their action in this regard will not be reviewed by the courts in the absence of fraud, or a manifest abuse of discretion. The court cannot control or revise such decision on the ground of inexpediency, injustice, or impropriety. Nor will it inquire into the motives of the tribunal to which the matter is committed when there is no allegation of fraud, or unless it is manifest that a flagrant wrong has been perpetrated upon the public and valuable rights have been surrendered ostensibly for the public good, but really for the benefit of a private individual."
In Dillon on Municipal Corporations, vol. 111 (5th ed.) at page 1838, the author states the rule: "The exercise of the power (to vacate a street) is discretionary on the part of the municipality; and in the absence of abuse the courts will not interfere with its exercise." See the authorities cited in note 1 to support the foregoing statement of the rule.
The following statement of the rule is found in 3 McQuillan on Municipal Corporations, at page 2991: "Primarily the expediency of vacating a street or alley rests in the discretion of the municipality, and the courts cannot interfere unless such discretion is clearly abused, or there has been fraud or collusion." 2 Elliott, Roads and Streets (3d ed.), sec. 1182, p. 761. Knapp, Stout Co. v. St. Louis, 156 Mo. 343, 56 S.W. 1102.
8. The allegation in the complaint concerning the agreement made by the city of Las Vegas and its board of city commissioners with the appellants the First *Page 77 
State Bank of Las Vegas, Hawkins, McNamee, and certain subdividers, is not sufficient averment of fraud. There is no allegation in the complaint that the city owns the land occupied by the present street. Nothing appearing to the contrary, it must be presumed that the title is in the abutting owners. 3 McQuillan's Municipal Corporations, sec. 1305, and cases cited in 74. Neither is it alleged that the city is selling or will sell the land occupied by the present street. These considerations alone make the matter of no concern to appellants. "The mere fact that petitioners for the vacation of a street or other persons will be benefited by such vacation is not sufficient to constitute such fraud or abuse of discretion as to authorize a court to interfere. And the court will not ordinarily look into the motives influencing the local authorities." 2 Elliott Roads and Streets, sec. 1183, p. 762; Albes v. Southern R. Co.,164 Ala. 356-365, 51 So. 327; People ex rel. v. Chicago, 154 Ill. App. 578
-582; Bellevue v. Bellevue Imp. Co., 65 Neb. 52,90 N.W. 1002; Tilly v. Mitchell Lewis Co., 121 Wis. 1, 98 N.W. 969, 105 Am. St. Rep. 1007; 3 McQuillan, Municipal Corporations, p. 2987.
9. We cannot agree with the claim that because the attorney-general refused to bring this action the appellants were entitled to do so. In the first place, the complaint does not show by sufficient allegation that the public interests have been or are about to be involved. In the second place, actions for redress or prevention of public wrongs must be prosecuted in the name of the state. Fogg v. N.C.O. Ry. Co., supra; 32 C.J. 295.
It is unnecessary to determine whether in any event a taxpayer on his relation in the name of the state could bring an action to enjoin a public nuisance, when the attorney-general refuses to do so.
The judgment of the court is affirmed. *Page 78