## Bevins et ux. v. Pauley et al.

(Decided Dec. 21, 1934.)

L. J. MAY for appellants.

E. J. PICKLESIMER for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

This controversy involves the claimed right of appellants to close so much of an old county road as crossed their lands in Pike county, after the establishment of state highway No. 82, running from Pikeville to Williamson. The word "highway," as used herein will apply to the new state highway, and the word "road" will mean the old county road.

It is admitted that the road was a regularly established county road, and its use by the public for more than forty years was proven. As indicated above, the only part of the road now in question is that which crosses over the lands of appellants, J. Mont Bevins and wife, and which seems to lie midway between the points where the highway left the road and again took it up. It appears from the proof and from a map filed that the road ran more or less directly, not in anything like a straight line, however, up the mountain to Bent Gap, and was of difficult grade at certain points.

The highway was planned and surveyed prior to 1921, and the engineers thought it better to construct the highway around, rather than directly up the mountain. The course followed by the highway between the points mentioned above will be set out later.

The road beginning at a point above Bent Branch

ran to Bent Gap, through lands at the time of this suit in this order, John Blackburn's, Bill Stanley's, then appellants', for quite a distance, then over the land of Tobe Blackburn, and perhaps others not shown on the map. At a point in the old road as it traversed the Tobe Blackburn farm there was what seems to be a private road furnishing an outlet to the road for Floyd and John Pinson, who lived some distance above Bevins' home.

The road prior to the construction of the highway was the main road for the use of the public, and those living in the neighborhood described, in traveling to Pikeville and Williamson, and since the establishment of the highway, while perhaps not used as frequently, it is nevertheless traveled to some extent by the neighbors to get to the highway. Its convenience and necessity in this respect are clearly established by the evidence.

When the survey was made for the highway it followed the old road for a greater part of the distance, but at the foot of the hills the route was outlined and adopted as indicated, thereby necessitating the acquisition of new rights of way. It required some land of John and Tobe Blackburn, Bevins and others.

On December 10, 1920, a notice signed by five citizens of Pike county (not one of whom seemingly owned any land near to or in the neighborhood of the lands in controversy) was posted, by which it was announced that on January 3, 1921, the signatories would present to the Pike county court a petition asking a change in the public road "in Pike County, beginning at W. T. Ford's line on John's Creek, at Station No. 457 on the State Highway leading from Pikeville to Williamson, as now surveyed by the county and state road engineers." Then follows the names of the landowners over whose lands the highway would run, and the notice advised that the court would be asked to appoint commissioners "and make all orders and judgments and grant all proper relief in the premises."

Pursuant to the notice a petition was filed on January 3, 1921. The petition is not in the record, its absence being accounted for by the county clerk, who says that after a strict search it could not be found. However that may be, on January 8, 1921, the court entered an order reciting the filing of the petition; reciting that

same set forth description of the proposed highway, and that the court had appointed three housekeepers to view the ground over which the highway was to run, and to assess such damages to owners and tenants as they might suffer by the building of the highway. The commissioners were also directed to report conveniences and inconveniences, both to individuals and the public; also to report expenses incident to the constructing of the highway. A special commissioner was appointed to prepare and present deeds from landowners for the necessary rights of way. Thereafter, on January 12, 1921, the commissioners made a report which did not set out conveniences or inconveniences to the public or individuals, nor the expense entailed by the new construction, nor in any way comply with the appointing order, except that it advised the court that the defendant there, who happened to be the appellant here, was to be paid the sum of $1,000, for land and fencing and probable damage to trees by acquirement of the right of way. This was their complete report.

No exceptions were filed to this report, and it was confirmed on February 10, 1921. Afterwards the special commissioner executed a deed on behalf of appellant and his wife to the state highway commission.

The foregoing is a fair recital of the orders and proceedings leading up to the completion of the highway some time in 1922 or 1923, and upon which completion Bevins, as he says, acting upon the advice of the county attorney, erected gates across parts of the road traversing his lands; his belief based upon advice, being that the construction of the highway ipso facto abandoned the road, and that he, being the owner of the land on each side thereof for the distance through his farm, became the absolute owner of the road by reversion. Appellant continued to maintain these gates across the road for some eight or ten years without complaint from his neighbors above or below his lands, and it appears from the proof that no complaint was made until some time in 1933, when appellant proceeded to put locks on the gates. Then the controversy arose. Upon complaint the county court appointed John Pinson overseer of the road and he began work thereon, removing the gates. A warrant was issued for appellant J. Mont Bevins, charging him with obstructing the roadway. The court fined Bevins $20 on this warrant.

Appellants then filed a suit in equity in the Pike

circuit court, seeking to have the court restrain Pinson from trespassing on his lands and the county judge from attempting to collect the $20 fine. The lower court granted a temporary injunction, but later, upon Bevins' motion, the case was submitted on the pleadings and such proof as had been adduced, with the result that the court set aside the temporary injunction, denied all relief sought, dismissed the petition, and plaintiffs appeal.

The determination of the question as to whether the road was closed in conformity to law will be conclusive in this case. In the first place, and this conclusion might answer the whole controversy, it is the opinion of the court that the whole proceeding from beginning to end, from notice to final order, was nothing more or less than an effort to condemn lands necessary for the purpose of constructing a state highway from Pikeville to Williamson. It matters not that the notice gave warning that a change would be made in the road; the report and final order confirming same determines the whole matter, and, as we have pointed out, the report merely allowed and the order awarded appellant $1,000, for the right of way. The commissioners reported, not on any change of road, but on the damage to Bevins by the taking of his land for the highway. No note was made of conveniences or inconveniences to the public or to individuals, and when summons was issued on the commissioner's report, all "interested parties" were not brought into court; seemingly only those being warned to appear who owned lands necessary for the new right of way. Neither was there any description of the highway or the road.

The report made by the viewers was as follows:

"The undersigned, J. A. Dils, W. K. Elliott and Kelsey Huffman, having been appointed commissioners in this proceeding to assess 'the damage which the defendant is entitled to received by reason of the plaintiff securing and appropriating the land sought to be condemned herein for the purpose of constructing and maintaining a public highway through the property of J. Mont Bevins on Bent Branch of John's Creek, and through other lands, and extending from the Town of Pikeville, Kentucky, to Williamson, West Virginia, the county seat of Mingo County, West Virginia;

"We would respectfully report that we were

duly sworn before entering upon the duties of said commissioners as required by law; that we went upon the land proposed to be taken and viewed the same, and do now award the said J. Mont Bevins the sum of $250.00 for merchantable timber trees and other small saplings taken and damage to adjacent lands, considering the purpose for which the right of way is to be taken. We would further assess the damage for right of way taken, to-wit: fifteen (15) acres, in the sum of $300. We would further allow said Bevins for the fencing taken, to-wit: 4600 feet, the sum of $450.00. We further find that the owner of the land is J. Mont Bevins, and that he is a resident of Pike County, Kentucky.

"That in the whole sum we would award him the sum of $1,000, as full and complete damage by reason of the construction of the said State Highway."

The report is conclusive that there was no change, alteration, closing, abandonment, or vacation of the road as it existed when the proceeding was begun, and the conclusion is strengthened by the order of final judgment of the court which merely confirms the report in all respects.

The law of this case is therefore well settled by the decisions of this court in Brown v. Roberts, 246 Ky. 316, 55 S. W. (2d) 9, and cases cited therein; Stephens v. Hubbard, 234 Ky. 115, 27 S. W. (2d) 665; Avondale Heights Co. v. Rhodes, 223 Ky. 409, 3 S. W. (2d) 774, and in point of law and fact by the case upon which appellant seems to strongly rely, Waller v. Syck, 146 Ky. 182, 142 S. W. 229, 231, particularly since it was very definitely pointed out in that case:

"It is very clear that, when it is desired to open a new road or to discontinue a road, the notice, petition, report of the commissioners, and orders of the court must expressly designate or describe the road proposed to be opened or discontinued; and, if this is not done, the proceedings will be fatally defective."

In the Brown case, supra, we said:

"Let it be assumed that there was an intention on the part of the public authorities to abandon the old road. Nevertheless it is held that

' "once a public road, always a public road," unless it is abandoned in the manner pointed out by the statutes enacted for the purpose.' Mills v. Dawson, 197 Ky. 518, 247 S. W. 764, 766, and the cases therein cited. It is now specifically provided by statute that:

" 'Every public road * * * which has not been lawfully discontinued or vacated shall continue as such, until properly discontinued. * * *'

"And further:

" 'No public road shall be established or discontinued, or the location thereof changed without due notice thereof having been given according to the provisions of this chapter.' Statutes, Secs. 4295, 4298.

"Certainly, property holders on the old strip could not be deprived of their easement and right to use the old road for access to their premises by the arbitrary action of another. To sanction this would be to deprive them of property without process of law. Where there has been a substantial deviation in the road, affecting the right of abutting property holders, the old portion of the highway can be closed only when it becomes necessary to do so, and that must be done in accordance with the provisions of the statute. This proposition is considered and elaborated in Illinois Central Railroad Co. v. Ward, 237 Ky. 478, 35 S. W. (2d) 863."

The two sections of the statutes referred to in the opinion above, as well as section 4304, Ky. Stats. (a part of the 1914 act), do not seem to be at all involved in or by the court's ruling in the case of Exall v. Holland, 166 Ky. 315, 179 S. W. 241.

Without going back and pointing out the many particulars wherein the proceedings in the county court failed to comply with either the act of 1914, or prior laws, it seems sufficient to repeat that, although the proceedings, by way of notice and petition, may have been, in form and substance, intended to have started a suit for the change, abandonment, or vacation of the old county road, they most assuredly failed to continue as such, and from the report on until and including the final order, the proceedings developed into nothing more nor less than a plain ordinary condemnation suit, with nothing to indicate change, alteration, vacation, or dis-

continuance of the old road. The court by its final order simply bought and paid one of the appellants $1,000, for some land for state highway No. 82, and did not disturb the old road or its use to those who had theretofore traveled it for many years.

It is not necessary to say more of the injunction sought against the county judge to prevent him from collecting the assessed fine against one of the appellants for obstructing the road, than that the allegations of the petition on this point are far from sufficient to state a cause of action, and besides section 362 of the Criminal Code of Practice allows an appeal to the circuit court if fine be in amount of $20 or more.

As to the injunction sought against Pinson, what has been said with regard to the effect of the proceedings had in the Pike county court with relation to the highway and road is sufficient for the court to conclude and hold that the lower court properly denied the relief sought against him. The court correctly refused the injunctions and dismissed the petition.

Judgment affirmed.