TEACHER BUILDING COMPANY, A CORPORATION,
· APPELLANT, v. THE CITY OF LAS VEGAS,
NEVADA, A MUNICIPAL CORPORATION; E. W.
CRAGIN, MAYOR OF SAID CITY OF LAS VEGAS,
NEVADA; REED WHIPPLE, ROBERT MOORE,
WILLIAM PECCOLE, WENDELL BUNKER, AND
E. W. CRAGIN, CITY COMMISSIONERS OF THE CITY
OF LAS VEGAS; AND GUS KLEIN AND MARTHA
KLEIN, HIS WIFE, RESPONDENTS.

No. 3624

May 23, 1951.                    232 P.2d 119.

*Jones, Wiener, Jones & Zenoff*, all of Las Vegas, for Appellant.

*Howard W. Cannon,* of Las Vegas, for Respondents, except Gus Klein and Martha Klein.

## OPINION

By the Court, EATHER, J.:

This action was brought to enjoin the respondents from vacating a portion of a certain street in the City of Las Vegas.

A demurrer to this complaint was interposed upon the grounds that the complaint did not state facts sufficient to constitute a cause of action.

The lower court sustained respondents' general demurrer to appellant's second amended complaint and without leave to amend.

The appeal is taken from the judgment entered in favor of defendants after the sustaining, without leave to amend, of defendants' demurrer to plaintiff's second amended complaint.

The parties stipulated to waive oral argument and to submit the appeal on the briefs, and it was so ordered. For the purpose of clarity, appellant will be referred to as the plaintiff and respondents as defendants.

The amended complaint, which will hereinafter be referred to as the complaint, alleges that the plaintiff is a corporation duly organized and existing under and by virtue of the laws of the State of Nevada, with its principal place of business in Las Vegas, county of Clark, State of Nevada; That the City of Las Vegas is a municipal corporation organized and existing under and by virtue of a certain act of the legislature of the State of Nevada, approved March 16, 1911; that the defendants, Pat Clark, R. T. Baskin, Reed Whipple, Robert Moore and E. W. Cragin, are the duly elected, qualified and acting city commissioners of the City of Las Vegas, and constitute the board of commissioners of said city; that E. W. Cragin is the duly elected, qualified and acting mayor of said city; that the defendants Gus Klein and Martha Klein are husband and wife, and residents of the City of Las Vegas, being the owners of certain property in the City of Las Vegas, being more particularly described as a portion of Lot 5 of

the South Addition to the City of Las Vegas, Nevada.

That the plaintiff is and has been the owner in fee and entitled to the possession of certain real property situated in the City of Las Vegas, described as Lots Q R and S of the South Addition to the City of Las Vegas, save and except a portion of Lot S; that said Lots Q R and S now have a frontage of approximately 440 feet on the east side of Main Street, which Main Street is now designated as "A" Street, said frontage running north and south from the northerly line of Charleston Boulevard and is 160 feet deep, running in a westerly direction; that said Main Street or "A" Street, as it is now designated, is a public street in the City of Las Vegas, duly dedicated for the public use and convenience, and is of the approximate width of 80 feet; that said street runs north and south, and has been used as a public street and for the public use and convenience for more than the last fifteen years; that pursuant to the provisions of the charter of the City of Las Vegas, said city is authorized to construct, improve and maintain city streets and avenues; that pursuant to such authority, it has been determined by the City of Las Vegas to reconstruct Charleston Boulevard, a public street in the City of Las Vegas, which runs east and west in said city, and at approximate right angles to Main Street or "A" Street, at the point where the property in controversy is located.

That pursuant to the authority vested in the city, said city heretofore condemned certain land belonging to the plaintiff herein, being a portion of Lot S, which portion of Lot S ran parallel to Charleston Boulevard along the northerly boundary of said Charleston Boulevard; that said defendant City of Las Vegas, is now in possession of that portion of Lot S, which was to be used to aid in the construction of Charleston Boulevard.

That the plaintiff is informed and believes that the defendant, City of Las Vegas, and defendants Gus Klein and Martha Klein, husband and wife, on or about May

24, 1948, entered into an agreement by the terms of which the said Gus Klein and Martha Klein agreed to convey to the City of Las Vegas a portion of their land, described as a portion of Block 5 of the South Addition to the City of Las Vegas, which constituted a strip of land along the south boundary of said Block 5, running westerly 40 feet from South Main Street, approximately 11.30 feet in depth, running northerly, and which strip of land is necessary for the purpose of reconstructing said Charleston Boulevard, provided that in consideration therefor, the City of Las Vegas would vacate a portion of "A" Street, as a public street within the City of Las Vegas, which portion to be vacated abutted the real property known as that portion of Block 5 adjoining the western line of Block 5, and being the easterly line of said "A" Street; that pursuant to said agreement the defendant, City of Las Vegas, on the 9th day of December, 1948, by and through the defendants, E. W. Cragin, as mayor, Pat Clark, R. T. Baskin, Reed Whipple, Robert Moore and E. W. Cragin constituting the board of city commissioners of the City of Las Vegas, made and entered an order vacating a portion of said "A" Street, a copy of which order is hereinafter set forth:

## "O R D E R

"A petition, dated the 26th day of October, 1948, signed by three (3) freeholders residing in the area affected, having been filed with the Clerk of this Board, petitioning for the vacation of those portions of "A" Street and First Street hereinafter described and said petition having been by the order of this Board referred to the Planning Commission of the City of Las Vegas for its recommendation in the premises, and said Planning Commission having filed its report, dated November 3, 1948, with this Board approving and recommending said vacation:

"And this Board, by an Order made at its regular meeting held on the 5th day of November, 1948, set the

9th day of December, 1948, at the hour of 3 o'clock P. M. at the Commissioner's Room of the Board of Commissioners, in the War Memorial Building, located at the Northwest corner of Fifth and Stewart Streets, in the City of Las Vegas, Clark County, Nevada, as the time and place for a public hearing on said Petition and recommendation, and Ordered the City Clerk to cause the aforesaid streets proposed to be vacated to be posted with a Notice setting forth the time and place of the public hearing and the extent of the proposed vacation; And it appearing from the affidavit of LaVerne R. Betchel, filed with the Clerk of this Board, that the Notice provided for in said Order, a copy of which Notice is attached to said affidavit, was posted on the 9th day of November, 1948, in the manner prescribed by said Order;

"And this being the time fixed for the hearing on said Petition for vacation and the recommendation of the Planning Commission thereon, and this Board having heard evidence in support of and in opposition to said Petition and recommendation;

"And it appearing to the satisfaction of this Board that the portions of the streets to be vacated are no longer required for the public use and convenience, that said vacation will inure to the benefit of the City of Las Vegas, and that neither the public nor any person will be materially injured thereby:

"IT IS HEREBY ORDERED that the following portions of "A" Street and First Street, to-wit:

> (Parcels 1 and 2 are hereby described by courses and distances and by reference to certain plats on file, and which, though unintelligible to the court without the assistance of a plat, are later recited to be portions of Main or "A" Street.)

be, and the same are hereby vacated."

Plaintiff further alleged that, pursuant to sec. 5063.29 N.C.L., that portion of "A" Street which the City of Las Vegas attempted to vacate by virtue of its order of December 9, 1948, would revert to Gus and Martha Klein

as the abutting property owners of the portion of the street vacated; plaintiff further alleged that said "A" Street, by said order vacating a portion thereof, will become a street approximately 50 feet in width instead of 80 feet in width, and would cause great inconvenience and be detrimental for public use thereof, and that the public will be materially injured thereby, and that plaintiff, and all other abutting property owners on said "A" Street on the westerly side of said "A" Street will be materially injured thereby, and that said "A" Street, by reason of said vacation, would become a dangerous traffic hazard in this respect—plaintiff alleges that the said "A" Street is intended to be used as a means of *ingress* and *egress* to an access road to be constructed at a point commencing at the northwest corner of "A" Street and Charleston Boulevard, running in a westerly direction, to connect with a private road constructed on the west line of said Lots Q R and S, and for the purpose of giving ingress and egress to the occupants of buildings adjacent to the tracks on the Union Pacific Railroad for the cartage of freight to and from said buildings and tracks. That motor equipment used for such purpose and over and through said roads on "A" Street will be heavy trucks; that said trucks in their normal operation over and above "A" Street will be required to make both left- and right-hand turns in and to "A" Street from Main Street, and in and on to Main Street from "A" Street.

That the vacation complained of will narrow said "A" Street to an extent that it will be made prohibitive, in view of the above-mentioned traffic, for any automobiles to be parked on the westerly side of "A" Street immediately in front of the property owned by plaintiff herein; that the convenience and public use of said "A" Street will be better served, and will be safer for the general public use of said street, if said street remains in its present state. Plaintiff further alleged that the purpose motivating the City of Las Vegas in making and entering said order of December 9, 1948, was to exchange

that portion of "A" Street attempted to be vacated by the said order for a portion of the Klein property described in Paragraph X of the complaint, and in order to save the city from condemning that portion necessary for such improvement as hereinabove recited, and save the city from paying therefor in money to Gus and Martha Klein, and not for the use and convenience of the public. The complaint further alleges that the acts of the city commissioners and mayor were a gross abuse of their and his discretion as duly elected officers, and was a legal fraud against the public interests. Plaintiff further alleged that it was a resident taxpayer of Las Vegas, Clark County, Nevada.

Plaintiff further alleged that it is the owner of all property abutting on the westerly side of "A" Street directly opposite the property on the easterly side of "A" Street vacated by order of the city commissioners hereinabove referred to; that the making and entering of said order and the vacation of "A" Street, as in said order recited, narrowing the width of said "A" Street will result in irreparable damage to plaintiff, in that the property owned by plaintiff and immediately abutting on the westerly side of "A" Street will be damaged by reason of the fact that said "A" Street will become interlocked, narrow and an unsafe street.

Plaintiff further alleged that the property of plaintiff abutting on "A" Street, will be damaged, and that plaintiff will be prevented from using said Lots Q R and a portion of S, owned by plaintiff, for construction of buildings and businesses for industrial occupants, in that said narrowing of said street will create such a dangerous condition that trucks and heavy industrial equipment will be unable to have reasonable ingress and egress on to and from said "A" Street, and further, that it will be impossible for trucks and heavy equipment to turn left from Main Street on to "A" Street, and right from "A" Street to Main Street, because of the narrowness of said "A" Street after same is vacated.

Plaintiff further alleged that at no time was plaintiff

compensated for the loss of its property rights by the narrowing of said street, nor has any condemnation proceeding been instituted to determine the damage done to plaintiff by virtue of said vacation; that neither the public necessity, interest or convenience requires an abandonment of said portion of "A" Street heretofore abandoned by defendants herein, and that the public derives no benefit from vacation of said portion of "A" Street. Plaintiff further alleged that it was without a speedy and adequate remedy at law.

The prayer is for judgment decreeing that the order made by the mayor of the City of Las Vegas and the board of city commissioners was in derogation of the law and void, and that the defendants, City of Las Vegas, and Gus Klein and Martha Klein, be permanently enjoined from using and occupying said "A" Street, or any portion thereof, for any purpose other than a public street, and for such other and further relief as may be just and proper in the premises, and for costs of suit.

The entire gist of the case is that plaintiff complains that, whereas "A" Street was a public street dedicated to public use and convenience, of the approximate width of 80 feet; that defendants, Gus Klein and Martha Klein, were the owners of the property abutting the easterly side of Main Street; that plaintiff was the owner of property abutting the westerly side of Main Street; that by virtue of the vacating of 30 feet on the easterly side of Main Street, also known as "A" Street, the property owned by the plaintiff on the westerly boundary of Main Street, or "A" Street, was materially injured. Plaintiff does not only complain of a general public injury, but contends that it is specially injured by virtue of the vacation, inasmuch as it, the plaintiff, is the owner of property abutting the westerly side of the street on which a portion of the easterly side was vacated.

Plaintiff contends (1) That an owner whose property abuts on a street has a vested interest in the entire width of the street in front of his land, and is entitled

to compensation for any appropriation of this property right. (2) That special damages are suffered by an owner whose property adjoins a street when a substantial part of the street is appropriated to another use. (3) That the taking of the property in issue by the defendant city was an unauthorized private appropriation, not having as its purpose the good of the public as a whole.

Defendants contend (1) That the second amended complaint of the plaintiff did not allege that plaintiff would suffer any special injury different in kind from that suffered by the general public. (2) That damages may be awarded under proper circumstances. In the instant case, damages were neither alleged nor demanded. (3) That the plaintiff has an adequate remedy at law if damages were, in fact, sustained and the lower court was therefore correct in sustaining defendants' demurrer.

Defendants further contend that the sole question before the court is whether or not the plaintiff is entitled to injunctive relief under the pleadings and that the question before the court has been completely settled in the State of Nevada by the case of Blanding v. City of Las Vegas, 52 Nev. 52, 280 P. 644, 68 A.L.R. 1273.

The instant case is distinguishable on the facts from the Blanding case, supra, and we think the contention of the defendants must be rejected. In the Blanding case the proceedings of the city commissioners complained of amounted to an alteration rather than a vacation of the street in question. And there is a distinction between the two. (See note to 26 A.L.R. 827.)

We are of the opinion that the ruling of the lower court was not proper in the instant case. The complaint does show that plaintiff will suffer injury special to itself and different in kind from that which will be sustained by the general public. A showing that an injury of this kind will be sustained is essential to enable

a person to maintain an action of this character. It is our opinion that the complaint does state facts sufficient to constitute a cause of action. "It has alleged a property right, that the right has been infringed, that it was infringed by an unauthorized act of the city council, that plaintiff has suffered special injury entitling it to seek an injunction against such action by the city. Plaintiff should be allowed to present probative evidence in support of these contentions."

It is the contention of the plaintiff as alleged in Paragraph XIII of its complaint "that it has been informed and believes and upon such information and belief alleges that the recitation in said order entered by said board of city commissioners, recited as follows:

'A petition dated the 26th day of October, 1948, signed by three freeholders residing in the area affected having been filed with the clerk of this board,'

is false and untrue in that if such petition was filed signed by three persons, that the said three persons were not freeholders residing in the area affected by the premises described in said order."

We therefore, are of the opinion that the lower court should hear the evidence and find the facts. As stated in the case of Kansas City v. Hyde, 196 Mo. 498, 96 S.W. 201, 205, 7 L.R.A. N.S. 639, 113 Am.St.Rep. 766, and which reads in part as follows:

"But suppose the council, intending the condemnation to be really for the sole benefit of the individual, in order to give it validity, should say in the ordinance that the property was to be condemned for a public street; would such a false recital in the ordinance be conclusive? Would it put the man whose property was to be taken, and the people in the district who were to be taxed for it, beyond the protection of the constitutional guaranty that their property should not be taken for private use? * * * And when the city comes to ask the aid of the court to carry the ordinance into effect, is it possible that the court must be a mere tool to do the will of the

council, with no power to inquire into the truth of the matter? What protection has a citizen for his constitutional rights if the courts cannot look through a sham and see the truth? And how can the courts learn the truth if they must take the recitals in the ordinance as conclusive and reject all evidence to show their untruth? What a reproach it would be to our system of jurisprudence and how humiliating would be the attitude of our courts if they were so powerless: But our law is not so lame, and our courts are not so impotent. The courts in such case will hear the evidence and find the facts."

Defendants have at all times, from the inception of this case, mistaken the theory of the case. In the case of Blanding v. City of Las Vegas, supra, all of the elements of an alteration were before the court, to wit: An existing street, the dedication of a new street connecting at both ends with the old street; and the conditional vacation of the old street. The old street remained— only its location had been changed. Part of the street was vacated to make way for another street. Plaintiff contends that this action caused great public inconvenience as well as inconvenience to himself since he would be compelled to travel over a more circuitous route in order to carry on his business. However, in the instant case plaintiff owns abutting property, which is certainly a factor in considering the question of special injury. The special damages suffered by the plaintiff in the instant case are *different in kind and not simply in degree from that suffered by the general public,* and it is entitled to maintain this action to enjoin such proposed vacation.

In the case at bar the plaintiff contends that the Blanding case is not in point for the reason that an owner whose property abuts on a street has a vested interest in the entire width of the street in front of his land, and is entitled to compensation for any appropriation of this property right.

The contention of the plaintiff is predicated on the principle that, so long as a street is a street, it is held by the city in trust for the public, and cannot be lawfully appropriated to a mere private use; and, so long as it is a street, an abutting property holder may *invoke* relief to prevent its being devoted to private purposes.

In the case of Fry v. O'Leary, 141 Wash. 465, 252 P. 111, at 113, 49 A.L.R. 1249, the court stated:

"We think it is also clear under the uniform weight of authority that one who is an abutting property owner upon a street or alley, any portion or the whole of which is sought to be vacated, has a special right and a vested interest in the right to use the whole of the street for *ingress* and *egress*, light, view, and air, and if any damages are suffered by such an owner, compensation is recoverable therefor. It follows, therefore, that if appellants' light, air, view or *access* is materially diminished, as alleged in the complaint, they are entitled to have the same passed upon by a jury regularly impaneled to determine the amount thereof." Citing cases.

It is further stated in the case of Fry v. O'Leary, 252 P. 113, supra:

"Respondents contend that the vested interest of an abutting property owner in a street extends only to the middle of the street, and that therefore appellants are not abutting property owners as to the 13 feet vacated, which is across the street. But this position is untenable. Carried to its logical conclusion, the council could vacate all the street opposite appellants' property, leaving but a 30-foot street, and still appellants have no cause for complaint because not abutting owners. Yet there can be no doubt that, under most circumstances, property on a street only 30 feet in width would not be as valuable as on one twice as wide, for there would be only half as much space for light, air, view, and means of *access*. An abutting property owner's vested interest is to the full width of the street in front of his

land, and he is entitled to use the whole thereof for *egress* and *ingress,* light, air, and view, and for any substantial or material diminution of any of these rights he is entitled to recover in damages."

In Smith v. Centralia, 55 Wash. 573, 104 P. 797 at 798, the right of an abutting property owner to the full width of the street was referred to in the following language:

"The rights which an owner of abutting property possesses in a street are different in kind from that possessed by one whose interest is only that of a right of way along a street. To close or partially close a street affects the right of *ingress* and *egress* to and from the property of an abutting owner. * * *" Citing cases.

The ruling of the Minnesota Supreme Court in Adams v. Chicago B. & N. R. Co., 39 Minn. 286, 39 N.W. 629, 633, 1 L.R.A. 493, 12 Am.St.Rep. 644, is particularly enlightening on this question:

"It is, however, hardly necessary to inquire how the lot owner gets his private right in the street; for it is established law that he has a private right, which, as we have stated, all cases concede extends to the necessity of *access.* Access to the lot is only one of the direct advantages which the street affords to it. * * * The abutting lot owners have paid for the advantage of the street on the basis of that width, either in enhanced price paid for their city lots, or, if the street was established by condemnation, in the taxes they have paid for the land taken. In such a case, if the state or municipality should attempt to cut the street down to a width of ten or fifteen feet, would it be an answer to objections by the lot owners, that the diminished width would be sufficient for the mere purpose of access to their lots? It seems as though the question suggests the answer."

In the case of Rensselaer v. Leopold, 106 Ind. 29, 5 N.E. 761, 762, and cases cited, it was held:

"That the owners of lots abutting on a street have peculiar and distinct interest in the easement in the

street, is a well established doctrine of law. * * * This right cannot be appropriated and taken from him against his consent without compensation."

On the question of special damages as set forth in plaintiff's complaint, Paragraph XVII, the case of Brazell v. Seattle, 55 Wash. 180, 104 P. 155, 158, seems directly in point. The question presented by the appeal was, as in the instant case, the sufficiency of the amended complaint. The city had closed the opposite half of the street from appellants, leaving appellants' side open. The court stated:

"The appellants as the owners of lots abutting on the portion of East Aloha Street partially vacated and narrowed, suffered special injury and damages, *different in kind and not simply in degree from that suffered by the community in general,* and are entitled to maintain this action to *enjoin* such vacation. The right of the owner of a city lot to use the adjoining street to its full width is well established, unquestioned, and one of which he cannot be deprived without just compensation. It is as much a property right as the lot itself."

The judgment in the above case was reversed, and the cause remanded, with instructions to overrule the demurrer.

The attorney for the defendants states in his answering brief that: "The sole question before the court is whether or not plaintiff is entitled to injunctive relief under the pleadings."

"Rights with respect to the use of highways may in a proper case be protected by *injunction* or enforced by mandamus * * *. *Injunction* is also available, as a general rule, to private individuals to prevent unauthorized, unlawful, or improper uses or acts which would cause them special or peculiar injury." 25 Am.Jur., sec. 243, page 536.

"It may be stated generally that the office of an injunction is the protection of property and rights of property.

Aside from these broad general statements, however, courts of equity, although an enumeration of the subjects has in some cases been attempted by them, have generally declined to lay down any rule which shall limit their power and discretion as to the particular cases in which injunctions shall be granted or withheld, regard being given to the fact that it is impossible to foresee all the exigencies of society which may require their aid and assistance to protect rights or redress wrongs. In fact it may be said that interposition by restraining orders is a matter of growth, and keeps pace with advancing civilization, and the courts are continually finding new subjects for such relief. * * * And where the right invaded, for protection of which injunction is sought, is secured by statute or contract, there is generally *no question of the amount of damages, but simply of the right.* On the other hand, a court of equity may interfere by injunction to restrain a party from enforcing a legal right against all equity and conscience. * * *"

14 R.C.L. sec. 66, page 365.

Plaintiff contends that compensation would be due regardless of the nature of the purpose of this appropriation, as set forth in plaintiff's second amended complaint, Paragraph XIV, whether public or private, but feels that its question is made more firm by reason of the private *character of the exchange.* Our Nevada statutes are worth perusing in regard to this issue.

The pertinent part of sec. 9155, N.C.L.1929, reads:

"The private property which may be taken under this chapter includes: (2) Lands belonging to the State, or to any county, or incorporated city or town, not appropriated to some public use. (3) Property appropriated to public use; provided, that such property shall not be taken unless for a more necessary public use than to which it has been already appropriated."

Here the property was not taken for a more necessary public use. It was not taken for any public use. The

thirty (30) feet in question was given to a private individual depriving other individuals of a right to the entire width of the street, a right which courts almost unanimously declare to exist, and for which these others are given a remedy in equity, or in law for damages.

Section 9156, N.C.L.1929, which reiterates for the most part the requirements of the property being applied for a more necessary public use, reads, in addition:

"Before property can be taken it must appear: 1. That the use to which it is to be applied is a use authorized by law. 2. That the taking is necessary for such use. 3. If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use."

Respondent submits that the statute cited therein is not applicable. It was not the taking of the land, either public or private, for any use. It was a vacation of a part of a street upon petition signed by three freeholders residing in the area after public hearing wherein it was determined by the governing body that the public would not be materially injured. Sec. 5063.29 N.C.L. provides in part:

"* * * that if upon public hearing the governing body is satisfied that the public will not be materially injured by such proposed vacation, it shall order such street vacated. * * *"

While the question of the necessity for closing a street or highway may belong exclusively to the legislative department of the government, still the question of public purpose or use remains subject to court review. As a rule, in such cases, the court will permit the defendants to make the issue and present evidence in support of it, unless it is manifest from the pleadings and proceedings that such closing is for the public interest. See 25 Am. Jur., p. 418, sec. 120.

There are sufficient allegations in the complaint, if established by proof, to raise serious doubt as to whether

the vacation was for the public interest. This would not appear to be a case where it is manifest that a vacation is for the public interest.

The decision of the lower court sustaining the defendants' demurrer to plaintiff's complaint is reversed, and the case is remanded to the district court for the entry of an order overruling defendants' demurrer to appellant's complaint and directing defendants to serve and file their answer thereto within such time as may appear proper.

Plaintiff is allowed its costs.

BADT, C. J., and MERRILL, J., concur.