**KERN RIVER GAS TRANSMISSION COMPANY, etc., Plaintiff,**

v.

**CLARK COUNTY, NEVADA, etc., et al., Defendants.**

**No. CV–S–90–638–PMP (RJJ).**

United States District Court,
D. Nevada.

Dec. 3, 1990.

**1112**

John C. Renshaw, Thomas F. Kummer, Philip C. Van Alstyne, Vargas & Bartlett, Las Vegas, Nev., for plaintiff.

Christopher Figgins, Deputy Dist. Atty., Las Vegas, Nev., for Clark County.

Val Steed, Chief Civil Deputy Atty., Las Vegas, Nev., for City of Las Vegas.

Richard C. Mauer, City Atty., North Las Vegas, Nev., for City of North Las Vegas.

## ORDER

PRO, District Judge.

In accordance with its Order of November 15, 1990, the Court heard argument on Thursday, November 29, 1990, regarding whether Plaintiff should be allowed to occupy certain land for the purpose of installing and maintaining an interstate natural gas pipe line. Construction of the project is scheduled to begin on Monday, December 3, 1990, and will be completed in January 1992 at a cost of slightly under $1 billion. Plaintiff has alleged that it will lose valuable construction contracts if the Court does not act in its favor by that date.

Before the Court is Plaintiff's Emergency Motion for Expedited Consideration and Consolidation (# 11). That Motion requests a ruling on the following motions previously filed:

1. Plaintiff's Motion for Immediate Occupancy (# 8), filed on November 1, 1990. Defendant Clark County filed its Opposition (# 16) on November 16, 1990, which was Joined by the City of Las Vegas (# 14) on November 15, 1990, and by the City of North Las Vegas (# 17) on November 16, 1990. Plaintiff filed its Reply (# 20) on November 28, 1990.

2. Defendant Clark County's Motion to Dismiss or In the Alternative for Summary Judgment (# 5), filed on October 23, 1990, which Defendant City of Las Vegas Joined (# 6) on October 24, 1990. Plaintiff filed an Opposition (# 10) to these Motions on November 13, 1990. Clark County filed its Reply (# 18) on November 26, 1990, and that Reply was Joined (# 19) by the City of Las Vegas on November 27, 1990.

3. Defendant City of North Las Vegas' Motion to Dismiss (# 7), filed on October 24, 1990, to which Plaintiff filed an Opposition (# 10) on November 13, 1990.

Kern River Gas Transmission Company ("Kern River") holds a Certificate of Public Convenience and Necessity ("the Certificate") issued by the Federal Energy Regulatory Commission ("FERC") on January 24, 1990. That Certificate authorizes Kern River to construct, operate, and maintain an interstate natural gas pipeline to trans-

port gas from Wyoming, through Utah and Southern Nevada, ultimately ending near Bakersfield in Southern California. During the certification process, all interested parties were given the opportunity to comment and object to the proposed route and manner of construction. In fact, according to Kern River, all Defendants participated in the FERC certification process in 1987 when they submitted their concerns, in writing, for FERC's consideration. *See* Exhibits 2–4 to Plaintiff's First Amended Complaint (# 3). No objections were made to the proposed pipeline route through Southern Nevada. *See* Motion for Immediate Occupancy at 11.

The Certificate is approved only for a 1–mile corridor stretching from its point of origin in Wyoming to its terminus in California. Kern River may not depart from the approved corridor without obtaining additional approvals from the FERC. Also provided for in the Certificate is a 12–month right-of-way and easement for the purpose of constructing the pipeline.

Defendants' Motions to Dismiss

Defendants raise many of the same basic issues in their various Motions to Dismiss (## 5, 6 & 7). First, Defendants argue that the Court has no jurisdiction to hear this matter because Plaintiff has not complied with Natural Gas Act provisions which must be fulfilled prior to filing suit. Specifically, Defendants argue that Plaintiff did not conduct thorough, good faith negotiations prior to filing their eminent domain suit, and that the Court is therefore deprived of jurisdiction.

The Natural Gas Act provides in pertinent part that:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts....

15 U.S.C. § 717f(h). Defendants argue that Plaintiff had to negotiate in good faith for the amount of compensation paid to Defendants for Kern River's permanent and temporary easements.

Plaintiff responds that such negotiations did occur. Indeed, Plaintiff's Opposition to the Motions to Dismiss (# 10) by the Affidavit of Kirk Morgan and the exhibits attached thereto, details and provides necessary supporting documentation of several months of negotiations between Kern River and Defendants. It appears that the parties had reached substantial agreement on everything except the actual location of the pipeline within the one-mile wide corridor provided by the certificate. *See* Proposed Agreements attached to Exhibits 2, 3, and 4 of Plaintiff's Opposition. For example, Kern River had tentatively agreed to upgrade the safety standards significantly over those required by the federal certification. In the Affidavit of Urban C. Livengood, Jr., Clark County's Deputy Director of Public Works, Mr. Livengood states that he talked to Mr. Morgan of Kern River and in doing so "did say that the terms and conditions in excess of minimum federal requirements could be considered compensation, if accepted as such, by the Clark County Board of Commissioners." *See* Affidavit at 3. This statement by a County official is certainly evidence that all parties considered the increased accommodations regarding safety as partial if not total consideration for the contract under negotiation.

█ Furthermore, at the hearing conducted November 29, 1990, Defendants argued that no impasse in the negotiations was reached prior to the filing of Plaintiff's Complaint on September 28, 1990. However, in Plaintiff's Opposition to the Motions to Dismiss, it appears that on August 21, 1990, the Board of County Commission-

ers held a meeting at which Plaintiff and the Public Works Director, Mr. Manning, presented the substance of a proposed agreement that was complete except for minor technical details. At that meeting, several County Commissioners indicated that they would not approve such an agreement unless the route was changed to one outside the mile-wide corridor previously approved by FERC. Plaintiff's Opposition (# 10) at 17–19, Affidavit of Kirk Morgan at 10, Exhibit 5. Under these circumstances, it would have been reasonable for Plaintiff to discontinue negotiations and file their eminent domain suit. However, Plaintiff did not do so. Instead, it continued to attempt to negotiate in good faith and did not file this suit until more than one month later, in spite of the County's insistence that Kern River move the route outside that provided for in its Certificate. The Court finds that negotiation attempts were sufficient to fulfill Plaintiff's statutory obligations under the Natural Gas Act. Consequently, Plaintiff had the statutory authority to seek enforcement of its right of eminent domain conferred by the FERC.

■ Defendants' second argument is that judicial consideration of possible local permit requirements is not ripe for review because Plaintiff has not applied for such permits. However, there is substantial evidence that Plaintiff tried several times to find out what, if any, local permits would satisfy Defendants. Each time, its applications were rejected. *See, e.g.,* Letter of July 11, 1990, from Kirk Morgan to Deputy Director of Clark County Department of Public Works Urban C. Livengood, Exhibit 1 to Affidavit of Kirk Morgan, attached to Plaintiff's Opposition (# 10). These applications included one for an encroachment permit. When Plaintiff submitted this application it was told that it would need a franchise permit. Mr. Morgan's letter, *supra,* requests "those permits and/or franchise which may be applicable in connection with the placement of our pipeline." *Id.* The letter was accompanied by supporting technical data which was retained even when the letter itself was rejected.

Under these circumstances, it does appear that the issue of whether Defendants will require permits of Plaintiff is ripe for review. While there must be a "case or controversy" for Plaintiff to raise this issue, it appears that an application submitted by Plaintiff was subsequently rejected. Therefore, the Court is not confronted with a situation in which Plaintiff is merely trying to get an injunction against an eventuality that will never arise.

Secondly, there is an issue as to whether federal preemption has occurred so that Plaintiff does not have to get any local construction permits or franchise agreements. The Supreme Court has held that the Natural Gas Act "confers upon FERC exclusive jurisdiction over the transportation and sale of natural gas in interstate commerce for resale." *Schneidewind v. ANR Pipeline Co.,* 485 U.S. 293, 108 S.Ct. 1145, 1151, 99 L.Ed.2d 316 (1988). In *Schneidewind,* the Court held that due to federal preemption Michigan could not impose regulations on the issuance of securities by a natural gas company regulated by FERC. *Id.* The issue in that case was whether the state law impermissibly regulated the "rates and facilities of natural gas companies used in transportation and sale for resale of natural gas in interstate commerce," since that was in the exclusive province of FERC. *Id.* at 1154.

In a case with a factually similar posture to that presented by Kern River in the instant suit, the Second Circuit held that regulation by New York's Public Service Commission was preempted by FERC's regulation of natural gas companies. *National Fuel Gas Supply Corp. v. Public Service Commission of the State of New York,* 894 F.2d 571 (2nd Cir.1990) (regarding certification of environmental compatibility and public need required by the Public Service Commission). In *National Fuel Gas Supply,* the Second Circuit held that the Public Service Commission review

> is undeniably a regulation of a facility used in the interstate transportation of natural gas. Such proceedings would certainly delay and might well, by the imposition of additional requirements or

prohibitions, prevent the construction of federally approved interstate gas facilities.

894 F.2d at 576–77 (footnote omitted). Therefore, the circuit court held, the review was barred by federal preemption doctrine.

As in the Second Circuit case, there is substantial evidence in the record that the reasons permits are being required of Plaintiff is to delay the construction project in order to gain leverage in moving the route away from developed areas. *See especially* Affidavit of Kirk Morgan at 11–12, attached to Plaintiff's Opposition. *See also* Plaintiff's Opposition at 17–19, and Exhibits 5 & 6 attached thereto. More support for Plaintiff's position is found in an exhibit attached to Defendant Clark County's Reply to Plaintiff's Opposition, the Affidavit of Urban C. Livengood, Jr., County Deputy Director of Public Works. In that Affidavit, Mr. Livengood states,

affiant told Mr. Morgan that *encroachment permit applications were premature since they would be dependent upon safety criteria* to be established in the future during franchise agreement negotiations. Mr. Morgan accepted this direction and offered the data attached to his July 11, 1990 letter for informational purposes only so that the County could retain or discard at its own will. Mr. Morgan then stated that he would prepare a new Kern River franchise application and file it with the County Commission. Affiant immediately contacted the Community Development Division of Public Works and instructed staff not to process encroachment permits for this project until they receive a copy of the pending franchise agreement and have spoken with affiant.

Affidavit of Urban C. Livengood, Jr., at ¶ 6. The clear implication to be drawn from these statements is that the County fully expected Plaintiff to comply with safety standards over and above those required by the federal licensing scheme.

It is specifically for such reasons that the federal preemption doctrine was developed. The Natural Gas Act undeniably provides safety-specific construction requirements. Therefore, such requirements cannot be applied by state and local governments in a cumulative fashion to prevent or delay the federal facility. While some permits which do not target concerns already exhaustively reached by the Natural Gas Act may properly be the subject of County and City action, Defendants cannot require Plaintiff to meet additional safety standards as a prerequisite to applying for other appropriate permits.

The Court accordingly holds that it is unnecessary for Plaintiff to apply for and acquire permits which conflict with federal requirements or unduly delay or encumber this federally approved interstate gas facility. The Court will therefore deny Defendants' Motions to Dismiss Plaintiff's claim for a declaratory judgment. For similar reasons, the Court will deny Defendant Clark County's Motion for Summary Judgment as it is based on this issue alone.

### Plaintiff's Motion for Immediate Occupancy

Plaintiff's Motion for Immediate Occupancy (# 8) seeks an Order giving Kern River immediate authority to occupy certain public road crossings by December 3, 1990, and other public land by February 1, 1991, for the construction of an interstate natural gas pipeline. Construction of the pipeline is scheduled to proceed in phases called "spreads" between December 3, 1990 and January 1992. The land on which construction is to commence on December 3, 1990 is largely rural and unimproved and is situated in Southwestern Utah and Southeastern Nevada. This land is referred to as "Spread 6" in Plaintiff's papers. *See* Plaintiff's Exhibit 1 to Hearing of November 29, 1990.

The other Nevada public land on which construction is to begin by February 1, 1991 is partially located in developed areas including parts of the City of Las Vegas, the City of North Las Vegas, and unincorporated areas of Clark County. This land is referred to as "Spread 7." *Id.*

According to Kern River, Defendants City of Las Vegas, City of North Las Vegas, and Clark County have informed Kern River that they will not enter into an agree-

ment to allow Kern River to enter the lands specified in the Certificate unless Kern River relocates a substantial portion of the pipeline route located in Spread 7 significantly beyond the one-mile corridor boundaries designated by the FERC.

Kern River asserts that through the Certificate issued by the FERC, it has been granted the right to exercise eminent domain powers pursuant to the Natural Gas Act, 15 U.S.C. sec. 717f(h). This authority is conditioned upon the forum state's procedure for eminent domain actions:

> (h) .... The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated....

15 U.S.C. § 717f(h).

Nevada Revised Statutes authorize the exercise of eminent domain for "all public purposes" authorized by the federal government, Nev.Rev.Stat. sec. 37.010(1), and specifically for interstate natural gas pipelines, Nev.Rev.Stat. sec. 37.010(13). Section 37.100 specifies the procedure by which a plaintiff can exercise its eminent domain authority. It appears that Kern River has complied with these provisions.

Kern River asserts that it must commence construction of the pipeline by December 3, 1990, in order to meet complex contractual and logistical obligations to its customers and suppliers involving hundreds of millions of dollars. Furthermore, some of the construction must take place during the winter months in order to protect Nevada's desert tortoise, an endangered species.

Kern River has conducted appraisals of the property involved in both the temporary and permanent easements. Kern River asserts that it is ready, willing, and able to deposit funds equal to the amount of the fair market value with the Clerk of the Court as required by Nev.Rev.Stat. sec. 37.100(4). *See* Motion for Immediate Occupancy at 10.

Kern River asserts that once the location of a route for the transportation of natural gas is approved by the FERC, an aggrieved party may seek review in the U.S. Court of Appeals for any circuit wherein the natural gas company to which the order relates is located or the Court of Appeals for the District of Columbia. However, no objection to the FERC's order shall be considered by the appellate courts "unless such objection shall have been urged before the [FERC] in [an] application for rehearing ..." 15 U.S.C. § 717r(b). Furthermore, the application for rehearing must be filed within thirty days of the issuance of the certificate. *Id.* at § 717r(a). The Tenth Circuit has held that no attack against the validity of an FERC order can be made in subsequent proceedings outside the parameters of sec. 171r(b). *McCullough Interstate Gas v. Fed'l Power Commission*, 536 F.2d 910, 913 (10th Cir.1976). That Circuit has gone on to hold that:

> [T]he eminent domain authority granted the district courts under ... 15 U.S.C. 717f(h)[ ] does not provide challengers with an additional forum to attack the substance and validity of a FERC order. The district court's function under the statute is not appellate but, rather, to provide enforcement.

*Williams Natural Gas Co. v. Oklahoma City*, 890 F.2d 255, 264 (10th Cir.1989).

■ The FERC issued its Certificate to Kern River on January 24, 1990. No Defendant filed a petition for rehearing within the thirty-day limit as required under 15 U.S.C. sec. 717r(a). Therefore, Defendants are now estopped from seeking a court-ordered new route for the gas pipeline (or any other substantial change to the Certificate as issued).

■ As its second basis for opposing Kern River's Motion for Immediate Occupancy, Clark County contends that the Natural Gas Act does not give Plaintiff the authority to condemn part of the Spread 7 route which incorporates substantial amounts of land already dedicated to public use. However, once the FERC has designated the mile-wide corridor, Kern River is able to act unilaterally to choose a specific route within that corridor. Each of the

Defendants could have objected at FERC hearings or in writing to the placement of the corridor on the basis that it followed land already dedicated to public use, but each chose not to do so.

Under general eminent domain law, there is some preference for taking private lands over taking land already dedicated to public use. More specifically, the County argues that "[i]f there is no express provision for the taking of public lands in the granting of the condemnation authority, authority will not be inferred if the condemnation will interfere with the pre-existing public use." Opposition at 3. Defendant Clark County further argues that Kern River has not demonstrated that the Natural Gas Act is an explicit grant of Congressional authority to the FERC to authorize the taking of lands already dedicated to public use. Therefore, the County continues, Plaintiff's attempted exercise of eminent domain power is without statutory authority and must fail.

■ Defendant Clark County misconstrues the law of eminent domain applicable in this case.

> If ... a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, *the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction,* the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication.

1 *Nichols on Eminent Domain* § 2.2 (3rd ed. 1990) (emphasis added). Thus, express authorization for acquisition of land already dedicated to public use is only required when the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction. The question, then, is not whether Congress has explicitly and properly delegated its authority to the FERC to authorize acquisition of land already dedicated to public use, but rather whether the proposed use would amount to such a substantial interference so as to be tantamount to destruction of the property.

■ As regards Spread 6, Defendants concede that construction and maintenance of the interstate gas pipeline through undeveloped areas will not be a "destruction" of that land. Therefore, the Court finds that through its equitable powers it is proper to grant Plaintiff immediate occupancy of the Nevada land encompassed by Spread 6. *Northern Border Pipeline Co. v. 127.79, etc.,* 520 F.Supp. 170 (Dist.N.D.1981). Of course, condemnation will not be formally complete until the issue of consideration has been properly adjudicated.

Whether the proposed interference with existing public uses rises to the level of "destruction" over the Nevada lands encompassed by Spread 7 is a closer question. Clark County points out that condemnation involved in these proceedings does not merely cross land previously dedicated to public use, but instead the interference is greater than normal because the natural gas pipelines are to run along these lands for substantial distances. Likewise, the County is correct to point out that Plaintiff's Complaint seeks to place rather cumbersome restrictions on Defendants' future use of these lands:

> 22. .... The use by Defendants and their successors and assigns, of any part of the Permanent Easement, is strictly limited to such use which shall not in any way whatsoever hinder, conflict, or interfere with Plaintiff's or its successors' and assigns', surface or subsurface rights described herein, or disturb or interfere in any way with Plaintiff's or its successors' and assigns', Facilities. To maintain proper operations of the Facilities, no structure, reservoir, or obstruction whatsoever shall be constructed, created, maintained, or facilitated by Defendants or by its successors and assigns, on, over, along, or within said Permanent Easement, or any portion thereof, without the prior written consent of Plaintiff, or its successors and assigns.

Complaint ¶ 22. The Complaint also seeks a judicial declaration that Plaintiff has the

discretion to determine when it is reasonable for it and its employees, agents, and independent contractors to exercise the rights of ingress and egress in conjunction with the Temporary Easement. *Id.* ¶ 23. These broad requests in Plaintiff's Complaint raise the question of whether the interference with the existing public uses of the developed property in Spread 7 rises to the level of destruction of that property for the prior public uses.

To the extent that parties cannot by continued negotiation resolve the foregoing concerns with respect to Spread 7, the Court will readdress the issue prior to February 1, 1991. In this regard, the parties shall be required to meet and confer prior to December 21, 1990, and shall attempt to resolve all issues pertaining to the precise location of Plaintiff's pipeline within or outside lands already dedicated to public use, and with respect to Plaintiff's proposed restrictions on Defendants' future use of the land subject to the pipeline easement. To the extent that parties are unsuccessful in resolving the foregoing matters, the parties shall, on or before January 4, 1991, file a joint statement identifying the precise issues remaining, and such additional authorities as any party asserts is material to said issues. The matter will thereupon be rescheduled for hearing before the undersigned on *January 11, 1991, at 9:00 a.m.*

■ In any event, the Court rejects Defendants' argument that Nevada law prohibits Kern River's use of the land as being 'less necessary' than existing uses. The Natural Gas Act requires Plaintiff to "conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the state where the property is located." 15 U.S.C. § 717f(h). It is unclear whether "practice and procedure" invokes all applicable state law, or only procedural issues such as notice. According to Nevada substantive law, which may or may not be implicated by the Natural Gas Act, condemnation shall not be entered if the property is already appropriated for public use unless the property sought has a "more necessary" public use. Nev.Rev.Stat. § 37.040(3). Unfortunately,

the statute gives no guidance as to whom the new use must be more necessary, or as to what constitutes a "more necessary" public use. Nevada courts considering these issues have found that a condemnation proceeding was justified where it involved taking a highway route over one proposed by the defendant where the evidence showed the road chosen to be safer, *State ex rel. Dep't of Highways v. Pinson,* 66 Nev. 227, 207 P.2d 1105 (1949), and that where a city attempted to vacate a 30-foot length of a street to give to a private individual in exchange for other land and such vacation would have deprived others of rights along the entire width of the street, such taking and vacation was not for a more necessary public use, *Teacher Building Co. v. City of Las Vegas,* 68 Nev. 307, 232 P.2d 119 (1951).

In light of the supremacy of federal law, this Court declines to attempt to balance the differing public uses. It is manifestly unlikely that Congress would have created the substantive right of eminent domain, clearly addressed in the Natural Gas Act, only to have that right held hostage to various state substantive schemes. *See Parkes v. Natural Gas Pipe Line Co.,* 207 Okla. 91, 100, 249 P.2d 462, 467 (1952) (the right of eminent domain under the Natural Gas Act is a federal substantive right). Under a broad interpretation of "practice and procedure," a state could conceivably eliminate all eminent domain proceedings by use of state statutes. Such an usurpation of a federal substantive right would violate the supremacy clause of the U.S. Constitution.

■ Furthermore, since the pipeline is expected to transport natural gas in interstate commerce, a state statute requiring the exercise of eminent domain over public lands to be dependent on whether it is "necessary" to local concerns, rather than the concerns of interstate commerce, is a clear violation of the Commerce Clause. The fact that Nevada law provides for eminent domain proceedings for interstate natural gas pipelines, Nev.Rev.Stat. sec. 37.-010(13), is evidence that Nevada, as a state, considers interstate natural gas pipelines to

be important and necessary. In any case, to the extent that the Court does consider the state statute, it must take into account a broad base of concerns and not limit its consideration solely to the concerns of Clark County residents as suggested by Defendant. *See* Opposition at 8. The very fact that Congress saw fit to provide a statutory scheme for authorizing "Certificates of Public Convenience and Necessity" through the FERC pursuant to the Natural Gas Act indicates that there are substantial national interests at stake. Thus, even if the pipeline must satisfy the "more necessary" use test, this Court finds that it does so.

Another reason put forth by Defendant Clark County for denying Plaintiff's Motion for Immediate Occupancy is that indispensable parties were not joined as defendants. Specifically, Clark County asserts that Nevada Power Company, Southwest Gas Corporation, Central Telephone Corporation, Las Vegas Valley Water District, and the Clark County Sanitation District should have been named as parties to this litigation. Defendant Clark County asserts, without supporting documents, that the water and sanitation districts have confirmed to Defendants' counsel that no negotiations have taken place between Plaintiff and themselves regarding the property in question. Opposition at 11.

The power company, gas utility, and cable television company have County franchises. Opposition at 11, Exhibits A, B, and F. The telephone company apparently has statutory authority to install its facilities in Clark County's rights-of-way without a franchise. Since the water and sanitation districts are both governmental subdivisions of the State of Nevada and quasi-municipal corporations, they, too, have no need of a franchise. Opposition at 12.

■ Defendant Clark County has properly stated that Nevada law requires a person to be a party to an eminent domain suit before a court divests or affects that person's right in a piece of property. Opposition at 12, citations omitted. Nev.Rev. Stat. 37.070 requires that the complaint contain "[t]he names of all owners, occupants and claimants of the property, if known, or a statement that they are unknown, who must be styled defendants."

It is unclear without more detail concerning the nature of the rights held by utilities and other third parties whether these are necessary or even desirable parties to this litigation. Because this Court's Order permits construction to begin immediately only in Spread 6 where the utility companies at issue have no interest at stake, the rights of potential parties will be adequately preserved until it is clear whether they can, or must, become parties to this suit. Because the Court will require Plaintiff to amend its Complaint to name the land at issue as a Defendant so as to put all potentially affected parties on notice, the Court will deny Defendants' Motions to Dismiss to the extent that they are based on the claim that indispensable parties have not been joined.

■ Federal Rule of Civil Procedure 71A(c)(1) requires a plaintiff in a condemnation proceeding to "name as defendants the property, designated generally by kind, quantity, and location, and at least one of the owners of some party of or interest in the property." Defendant Clark County asserts that Plaintiff's Motion for Immediate Occupancy should be denied on this basis because the property itself is not a named defendant in the action. The policy reason behind the Rule 71A(c)(1) is that it enables third parties to know if they should intervene in the action. Here, for instance, a proper labelling of the land as a defendant might have notified other utility companies that their rights might be affected by the litigation.

Because the construction which is scheduled to begin on December 3, 1990, is in Spread 6 only, there will be no prejudice to any potential party by giving Plaintiff leave to amend its First Amended Complaint to reflect the status of the land as a defendant rather than dismissing the case. The Court will therefore order Plaintiff to amend its First Amended Complaint to reflect the status of the land as a defendant in this action. The Court will also entertain *timely* motions from third parties, whether they be private land owners or

County franchise holders, who seek to intervene in this matter following the amendment.

Finally, Defendant Clark County argues that should the Court be inclined to grant Plaintiff's immediate occupancy of the proposed pipeline site, the amount of money deposited with the Clerk of the Court should be increased. The Plaintiff has offered to deposit $110,645.00 for the Permanent Easement and $4,500.00 for the Temporary Easement and asserts that there are no severance damages. Defendant Clark County asserts that severance damages should be calculated which include either the difficulty of constructing, using and maintaining public streets which contain a 36 inch high pressure gas pipeline and its appurtenances or the need to actually relocate some existing roadways. Furthermore, Defendant Clark County asserts that the other utilities may be precluded from using the same public rights-of-way and should be compensated accordingly.

The Court is hopeful that the parties will be able to reach an agreement as to adequate compensation. Therefore, the Court will deny Defendants' Motions to Dismiss to the extent that they are based on this issue, and will consider compensation issues when they are ripe for adjudication.

### ORDER

IT IS THEREFORE ORDERED that Defendant Clark County's Motion to Dismiss (# 5), joined by Defendant City of Las Vegas (# 6) is denied.

IT IS FURTHER ORDERED that Defendant City of North Las Vegas' Motion to Dismiss (# 7) is denied.

IT IS FURTHER ORDERED that Plaintiff is instructed to amend its First Amended Complaint (# 3) to reflect the status of the land at issue as a defendant to this action.

IT IS FURTHER ORDERED that Plaintiff's Motion for Immediate Occupancy (# 8) is granted with respect to the Nevada lands encompassed within Spread 6.

IT IS FURTHER ORDERED that consideration of Plaintiff's Motion for Immediate Occupancy (# 8) is hereby stayed with respect to Plaintiff's request to occupy Nevada lands contained within Spread 7, until after the parties have complied with the provisions of this Order set forth at page 16, lines 1–12, and the further hearing to be conducted on January 11, 1991, at 9:00 a.m.